Anthony Dwayne
**YARBOUGH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–86–00501–CR, 05–86–00502–CR.**

Court of Appeals of Texas,
Dallas.

June 5, 1987.

---

Douglas H. Parks, Dallas, for appellant.

Jeffrey B. Keck, Dallas, for appellee.

Before STEPHENS, HECHT and THOMAS, JJ.

HECHT, Justice.

An evening of fun at the State Fair became a night of horror for two young girls when they were abducted, brutally raped and threatened with death by Anthony Dwayne Yarbough and his companion, Jimmy Lee Grady.[1] Yarbough was convicted on two indictments charging aggravated sexual assault of a child. The jury imposed upon him the maximum sentence allowed by law, life imprisonment and a $10,000 fine for each offense.

Now on appeal Yarbough complains of error in his trial. First, he contends that the State's exercise of its peremptory challenges to prospective jurors was racially motivated and denied him equal protection of the law in violation of the fourteenth amendment to the United States Constitution. Second, he contends that the statutory instructions to the jury regarding the existence of parole and good conduct time violated constitutional separation of powers and due process provisions. Finally, he contends that the district court erroneously admitted a penitentiary packet into evidence.

We reject Yarbough's contentions and affirm the judgment of the district court.

## I

Reverend B—, an ordained Baptist minister, and his wife could not take their two daughters, D—, age 14, and S—, age 13, on their annual visit to the State Fair. Rev. B— suffered from a cancerous and ultimately terminal brain tumor which impaired his eyesight, and his wife was tired. So Rev. B—'s associate, J—, age 26, who lived with the B—s as part of their family, took the girls to the fair.

---

1. *See Grady v. State,* 730 S.W.2d 191 (Tex.App.— Dallas 1987).

J— drove D— and S— to the fair in the church van about 5:00 p.m. and parked across the street from the fair grounds in a makeshift parking lot because all the official lots were full. For some five hours they enjoyed the fair, riding the rides and playing the games. By 10:30 p.m. they were ready to start home.

As J— opened the door of the van, Yarbough and Grady came around the front of the van with a shotgun. Yarbough ordered J— and the girls to crouch down and give him all their money or they would be "blown away". After they had complied, Grady forced them into the van at gunpoint. J— begged Yarbough and Grady to just take the van and leave them there, but Yarbough said, "It just don't work that way."

Angry and swearing, demanding more money from his hostages, Yarbough drove the van on an erratic, high-speed course until he stopped by a dumpster near some apartments. Yarbough told Grady to kill J— if he moved and then climbed into the back seat with D—. Yarbough ordered D— to remove her clothes, lean back on the seat and spread her legs apart. Then, he raped her, causing her much pain. When she pretended to faint, he slapped her repeatedly and told her to put her clothes back on. Yarbough demanded more money or S— would "get it" too, and drove off again.

Stopping a second time, Yarbough told S— to get in the back of the van. Yarbough then raped S—, who was screaming and crying "no", while Grady again held the shotgun on J—. When Yarbough had finished with S—, he asked Grady if he "wanted some". Then he and Grady announced that they were leaving. Threatening death to their victims if they did not stay in the van for at least ten minutes, Yarbough and Grady left.

The peril past, J—, D— and S— began to hug one another and pray. Suddenly, Yarbough and Grady returned, looking for a baseball cap one of them had been wearing. After finding it, Yarbough again asked Grady if he "wanted some", and this time Grady said yes. Grady raped S— first, then D—, in the back of the van while Yarbough held the shotgun on J—. Again warning their victims to remain in the van, Yarbough and Grady left them praying for the last time.

J— drove the girls to Parkland Hospital where they were treated and released. At 5:00 a.m. they returned home, where Mrs. B— had been waiting up all night.

## II

In his first point of error Yarbough complains that the district court erred in overruling his objection to the State's use of its peremptory challenges to strike all four black members of the venire. Yarbough's first point of error is overruled.

## A

The substantive rule has not changed: the State's exercise of peremptory challenges for purely racial reasons violates the Equal Protection Clause. *Swain v. Alabama*, 380 U.S. 202, 203–204, 224, 85 S.Ct. 824, 826–827, 838, 13 L.Ed.2d 759 (1965); *Batson v. Kentucky*, 476 U.S. 79, ——, ——, 106 S.Ct. 1712, 1716, 1719, 90 L.Ed.2d 69 (1986). What has changed is the evidentiary requirement to prove a violation of the rule. In *Swain* the Supreme Court held that a defendant could prove unlawful discrimination by the State through the use of its peremptory challenges, not merely by pointing to the exclusion of a racial group from the jury in his own case, but only by showing a systematic exclusion in case after case. In *Batson* the Court rejected the evidentiary requirement of *Swain* and held:

[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can

be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." ... Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising *voir dire,* will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.... [W]e emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause.... But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race.... [T]he Equal Protection Clause ... forbids the States to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black.... Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or "affirming his good faith in individual selections." ... The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court will then have the duty to determine if the defendant has established purposeful discrimination.

*Batson,* 106 S.Ct. at 1722–1724.

■ Yarbough was tried six weeks before *Batson* was decided. Nevertheless, *Batson*'s requirements apply retroactively to cases like this one pending on direct appeal or not yet final, if the issue is preserved. *Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Henry v. State,* 729 S.W.2d 732 (Tex.Crim. App.1987). Yarbough's objection was sufficient to preserve the issue for appeal. *Henry v. State,* 729 S.W.2d 732 (Tex.Crim. App.1987); *Keeton v. State,* 724 S.W.2d 58 (Tex.Crim.App.1987).

### B

Whether an inference of unlawful discrimination is raised depends upon "all relevant circumstances." *Batson,* 106 S.Ct. at 1723. As the Supreme Court has noted, the determination of the trial court is crucial. *Batson,* 106 S.Ct. at 1723–1724. Not all factors to be considered in determining whether the State's exercise of its peremptory strikes is racially motivated appear in the record. Factors pertinent to credibility—voice inflections, hesitancy, facial expressions, and demeanor of both counsel and prospective jurors—may supply the basis for determining whether to infer unlawful discrimination by the State. The trial judge is accustomed to weighing such factors and is in a unique position to do so.

Not auguring the specific requirements of *Batson,* the district court did not make a finding at trial on what we now know to be the threshold issue of whether Yarbough raised an inference of purposeful discrimination. Absent that finding we cannot and should not attempt to resolve that issue based upon the trial record alone. *See Batson,* 107 S.Ct. at 1725; *Henry v. State,* 729 S.W.2d 732 (Tex.Crim.App.1987); *Kee-*

ton v. State, 724 S.W.2d 58 (Tex.Crim.App. 1987); United States v. Leslie, 813 F.2d 658 (5th Cir.1987).

Accordingly, during the pendency of this appeal we directed the district court to conduct a further hearing to determine, under the standards of Batson, based upon all relevant circumstances at the original trial and this hearing, whether there has been purposeful racial discrimination in the State's exercise of its peremptory strikes. Yarbough was to be given the opportunity to demonstrate a prima facie case. If the trial court determined that he failed to do so, the State was not to be required to explain the basis for the exercise of its peremptory strikes. If the trial court found that Yarbough succeeded in making a prima facie case, the State was to be given the opportunity to offer a neutral explanation for its actions. The trial court was to decide whether Yarbough has established purposeful discrimination, reduce that decision and the reasons for it to writing, and file it with this court as a supplemental transcript along with the statement of facts from the hearing. The district court has fully complied with our order.

### C

At the Batson hearing the district court found that Yarbough made a prima facie case of purposeful discrimination. Accordingly, the prosecutor who conducted the voir dire at trial then testified as to his reasons for striking all four black veniremen, Mr. Turner, Ms. Gardner, Mr. Willis, and Ms. Moore.

The prosecutor testified that he struck Mr. Turner for four reasons. First, Turner equivocated on whether he could consider a sentence of life imprisonment for the crime of aggravated sexual assault, and the State certainly preferred a juror who could impose the maximum sentence in this case. See Rijo v. State, 721 S.W.2d 562, 565 (Tex.App.—Amarillo 1986, no pet.). Second, Turner's sister had been arrested, and the State preferred a juror whose family had not had any criminal problems. Id. at 564. Third, Turner was a 23-year-old, single male who had held his current job for

only one year, and the State preferred an older juror with greater job longevity because Yarbough and Grady appeared to be youthful. Fourth, Turner stated that he thought he had heard something about the police officers in the case on television or elsewhere, and the State preferred a juror who had heard nothing about the case or the witnesses.

The prosecutor testified that he struck Ms. Gardner for two reasons. First, the prosecutor was concerned that even though she answered she could consider the full range of punishment and apply the law of parties, her demeanor raised a doubt as to her answers. See Chambers v. State, 724 S.W.2d 440, 442 (Tex.App.—Houston [14th Dist.] 1987, no pet.). The prosecutor expressed his doubt to her during the voir dire examination. Second, Gardner had previously served on a jury in a civil case which resulted in a mistrial. Even though Gardner did not indicate that she caused the mistrial, the State preferred a juror who had not served as a juror in a mistried case.

The prosecutor testified that he struck Mr. Willis because criminal records indicated that Willis had twice been arrested for theft. The State preferred a juror with no prior arrest record. See Rijo v. State, 721 S.W.2d 562, 564 (Tex.App.—Amarillo 1986, no pet.).

The prosecutor testified that he struck Ms. Moore for three reasons. First, Moore was relatively young and single, and in this case the State preferred a juror older and married. Second, Moore smiled at the defendants, and the prosecutor was concerned that she might be sympathetic toward them. See Rodgers v. State, 725 S.W.2d 477, 480 (Tex.App.—Houston [1st Dist.] 1987, no pet.). Third, Moore supplied all the requested information on her juror information card except religious preference, and the State preferred a juror with a religious preference.

■ Counsel for Yarbough and Grady vigorously cross-examined the prosecutor as to the reasons for striking some jurors and his consistency in not striking others. The record reflects that the prosecutor

gave a cogent, consistent, credible explanation for the exercise of his strikes without racial discrimination. He also testified that he did not consider race as a factor in exercising his peremptory strikes.

The district court found the prosecutor's testimony to provide a racially neutral explanation for the State's exercise of its peremptory challenges. The trial court's determination is crucial and entitled to great deference. *Batson*, 106 S.Ct. at 1724. The district court's findings are not to be disturbed unless clearly erroneous. *See Chambers v. State*, 724 S.W.2d 440, 442 (Tex.App.—Houston [14th Dist.] 1987, no pet.); *Rodgers v. State*, 725 S.W.2d 477, 480 (Tex.App.—Houston [1st Dist.] 1987, no pet.). In this case the district court's findings are not clearly erroneous.

### III

 In his second point of error Yarbough contends that the jury instructions given by the district court as required by article 37.07, section 4(a), Texas Code of Criminal Procedure (Vernon Supp.1987), violated the Texas Constitution's separation of powers provision and denied him due process of law. We have previously rejected both of these arguments. *Rose v. State*, 724 S.W.2d 832 (Tex.App.—Dallas 1986, pet. granted); *Joslin v. State*, 722 S.W.2d 725, 730–736 (Tex.App.—Dallas, pet. granted). Yarbough's second point of error is overruled.

### IV

 In his third point of error Yarbough complains that the district court erred in admitting into evidence a penitentiary packet improperly authenticated. The packet bore a certification dated November 7, 1982, that the enclosed documents were identical to the originals. However, the judgment and order imposing probation included in the packet are dated January 18, 1983, two months after the packet was certified. The district court ruled this discrepancy a typographical error and overruled Yarbough's objection to the packet.

The ruling was not error. The certification date need not be specifically attested.

Texas Rules of Criminal Evidence 902(10) (formerly Texas Revised Civil Statutes article 3731a, § 4). *E.g. Fontenot v. State*, 704 S.W.2d 126, 128–129 (Tex.App.—Houston [1st Dist.] 1986, no pet.). *See also Order of Aztec v. Noble*, 174 S.W. 623 (Tex.Civ.App.—Austin 1915, no writ). The error in the date is obviously clerical and insufficient to render the packet inadmissible. *Barber v. State*, 628 S.W.2d 104, 112 (Tex.App.—Houston [14th Dist.] 1984, no pet.). Yarbough's third point of error is overruled.

AFFIRMED.