Anthony KIRVEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–87–00041–CR.

Court of Appeals of Texas,
Dallas.

April 11, 1988.

John H. Hagler, Dallas, for appellant.
Sharon Batjer, Dallas, for appellee.

Before DEVANY, LAGARDE and THOMAS, JJ.

THOMAS, Justice.

Anthony Kirven appeals his conviction for attempted capital murder wherein the jury returned a guilty verdict and assessed punishment at life imprisonment in the Texas Department of Corrections and a $10,000.00 fine. In two points of error, Kirven contends that: (1) the evidence is insufficient to support the conviction; and (2) the admission of bolstering testimony before the jury constituted reversible error. For the reasons below, we overrule both points of error and affirm the trial court's judgment.

## SUFFICIENCY OF THE EVIDENCE

In point of error number one, Kirven contends that the evidence is insufficient to support the conviction. The standard for appellate review of the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Garrett v. State*, 682 S.W.2d 301, 304 (Tex.Crim.App.1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985). Utilizing this standard, we now review the evidence in this case.

During the early evening hours of Sunday, May 4, 1986, and the early morning hours of Monday, May 5, 1986, officers from the Dallas Police Department answered five different service calls in the 2700 and 2800 blocks of Cleveland Street in south Dallas. The fifth call at approximately 2:00 a.m. reported a disturbance at 2800 Cleveland Street, apartment 103. Dallas police officers O'Neil and Wilson were dispatched to that location. Upon investigation, the officers determined that it was a bogus call and they returned to their vehicle. As Officer O'Neil was fastening her seat belt in the front passenger seat, she heard a loud explosion. When the passenger window shattered, the officers realized that a shot had been fired and that Officer O'Neil had been injured. The officers immediately called for help. Because they did not at the time know where the shot had come from, Officer Wilson drove the vehicle around the corner. Personnel from the Physical Evidence Section of the Dallas Police Department immediately responded and began to take photographs and extract physical evidence, including the bullet that struck Officer O'Neil, from the car. Once this was completed, the vehicle was placed in its original position on Cleveland Street so that the officers could determine from the trajectory the origin of the bullet. Once the line of fire was determined, the officers began to focus on a particular apartment building at 2807 Cleveland Street.

After searching a vacant apartment, the officers proceeded to the next apartment, which was number 209. The front door was open and the officers saw a handgun underneath a loveseat. While examining this weapon, they saw what appeared to be the butt of a rifle or shotgun under another piece of furniture. After obtaining a search warrant, the police conducted a thorough search of the premises. They dusted the apartment and weapons for fingerprints and were able to lift and develop comparable prints.

Because of the damage to the copper jacket of the bullet, the experts could not determine if the recovered bullet was fired from the rifle found in the apartment. A firearms examiner did testify, however, that the jacket had the same general rifling characteristics as the subject rifle. Two witnesses, including one for the defense, testified that the prints found on the rifle belonged to Kirven. According to one of

the police officers, the prints located on the pistol grip area of the rifle conformed to how a person would hold the rifle if he were shooting it and were inconsistent with someone just trying to grab the rifle.

The key witness for the State was Y____ G____, a fifteen-year old girl. At trial, Y____ testified that she and a friend were walking through the apartment complex at approximately 2:00 a.m. While she was not wearing a watch at the time, Y____ stated that she remembered the time because she had looked at a clock immediately before leaving another friend's house. Y____ stated that as she came through the complex she noticed Kirven leaning out an upstairs window with a "long gun" in his hand. According to Y____, as she stood there, Kirven called out: "If you don't move on then I'm going to shoot you too." Once Kirven said this Y____ and her friend started to walk away and as they were halfway across the street, she heard a gunshot. Y____ did not see who fired the shot since her back was turned. Upon hearing the shot Y____ immediately took off running toward her house. Y____ stated that she had seen Kirven several times in the neighborhood and that she recognized his voice. This was the only witness who placed Kirven in the window with a weapon at the time of the shooting.

Kirven testified on his own behalf. According to Kirven, he had been in the area all day with his brothers, Calvin and Johnny Ray, as well as a group of men. Kirven further admitted that he was present in apartment 209 when the shot was fired at these police officers. Kirven pointed out that earlier in the evening, at about 10:00 p.m., Johnny Ray had shot at some police officers from the same apartment. At the time of the 10:00 o'clock shooting, Kirven, Calvin and the other men were standing around outside. After being questioned by police, they went to a nearby store to buy beer and returned to apartment 209. At that point they all sat around in the living room drinking beer and smoking marijuana. They heard another gunshot and went into a bedroom. It was sometime later when Calvin observed these police officers walking through the complex. According

to Kirven, Calvin was "spaced out" on drugs and he picked up the rifle and shot at the car in order to scare the police. Kirven went on to explain that Calvin was a drug dealer and approximately two months before had been arrested as a result of a drug raid at the apartment. Calvin recognized Officer Wilson as being one of the arresting officers and this is why he shot at them. Calvin was still upset because his money had been seized in connection with the drug raid. Kirven stated there were six or seven guys in the room at the time the shot was fired and Johnny Ray immediately grabbed the gun. It was Kirven's contention that his fingerprints appeared on the weapon because he took both guns and hid them underneath the furniture after the shooting.

Kirven said that Y____ was making up the story about having seen him in the window and speculated that she might have seen Johnny Ray earlier when he shot the gun or maybe saw Johnny Ray as he attempted to get the gun from Calvin. In any event, Kirven denied that anyone shouted at Y____ or threatened to shoot her if she did not move along. The only reason that he could suggest as to why Y____ would blame him is because he had forced her to leave a nearby pool hall on a number of occasions because of her age.

Specifically, Kirven contends that the evidence is insufficient because of the inconsistencies in Y____'s testimony and because the State failed to prove that his brother did not fire the shot. We agree that Y____ gave differing versions of the facts during the course of these proceedings, the details of which will be addressed in connection with Kirven's second point of error.

These inconsistencies, however, do not render the evidence insufficient. The jury may resolve or reconcile conflicts in the testimony, accepting or rejecting such portions of the evidence as it sees fit. *Nixon v. State*, 572 S.W.2d 699, 700–701 (Tex. Crim.App.1978); *Banks v. State*, 510 S.W. 2d 592, 595 (Tex.Crim.App.1974). The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. TEX. CODE CRIM.

PROC.ANN. arts. 36.13, 38.04 (Vernon 1979); *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984).

Kirven argues further that the evidence is insufficient because the State failed to rebut his testimony that Calvin shot at the police officers. In a circumstantial evidence case, the sufficiency of the evidence is judged by the same standard as that for direct evidence cases. *Wilson v. State,* 654 S.W.2d 465, 471 (Tex. Crim.App.1983). However, if the evidence supports a *reasonable* inference other than the guilt of the defendant, a finding of guilt beyond a reasonable doubt is not a rational finding. *Id.* at 472; *Perez v. State,* 695 S.W.2d 51, 52 (Tex.App.—Corpus Christi 1985, no pet.). It is not required that the circumstantial evidence should, to a moral certainty, actually exclude every hypothesis other than guilt of the accused. *Carlsen v. State,* 654 S.W.2d 444, 447 (Tex.Crim.App.1983). Rather, the evidence need only exclude reasonable hypothesis consistent with the circumstances and facts proved. *Id.*

The State established, through its witness, that Kirven was in the window from which the shot was fired shortly before the shooting. He had a rifle in his hand and threatened to shoot at Y——. Before Y—— crossed the street a shot was fired behind her. Kirven would have the jury believe that Y—— was fabricating all of this or that she saw his brother, Johnny Ray, in the window and it is a case of mistaken identity and time. We hold that this hypothesis is not reasonable in light of all of the facts and circumstances.

For these reasons, we hold that the evidence is such that any rational trier of fact could have found the essential elements of the offense of attempted capital murder beyond a reasonable doubt. Consequently, we overrule the first point of error.

## BOLSTERING TESTIMONY

In the second point of error, Kirven complains of improper bolstering. Officer Donald Ortega testified that he was the head investigator of the shooting of· Officer O'Neil. In that capacity he interviewed Y—— and investigated her story. At trial, the following colloquy occurred:

[Prosecutor]: Officer, in your interview with [Y——], did she tell you anything that you later found to be simply not true like physical evidence, or by some other kind of fashion?

Ortega: During my interview with [Y——], I went over some of the facts of her statement and she gave me information that is not in that statement. But, at no time did I receive anything, or that I am aware of that she made any false statements to. So as far as I'm concerned she was truthful then and she is truthful—

[Defense Counsel]: Judge, I'm going to object as bolstering the witness' testimony from this officer.

The Court: Sustain the objection.

[Defense Counsel]: I ask that the jury be instructed to disregard it.

The Court: Members of the jury, you will disregard the last statement of the witness.

[Defense Counsel]: And I move for a mistrial.

The Court: Denied.

Kirven contends that the trial court erred in denying his motion for mistrial. We disagree.

Bolstering occurs when one item of evidence is improperly used to add credence or weight to some earlier unimpeached piece of evidence offered by the same party. *Pless v. State,* 576 S.W.2d 83, 84 (Tex.Crim.App.1978); *Reed v. State,* 703 S.W.2d 380, 386 (Tex.App.—Dallas 1986, pet. ref'd). However, not all corroborative evidence constitutes improper bolstering. In *McKay v. State,* 707 S.W.2d 23, 33 (Tex. Crim.App.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986), a police officer was asked whether a witness' written statement recited the same facts as told to him by the witness. The court held that the testimony was not improper bolstering because the witness had been impeached. Thus, a party may offer corroborative evidence to rehabilitate an im-

peached witness. *See Adams v. State*, 514 S.W.2d 262, 264 (Tex.Crim.App.1974).

 In this case, Y—— was impeached by several prior inconsistent statements. Not only were there discrepancies in her written statement to the police and her trial testimony, there was also introduced an affidavit executed by Y—— in which she denied having seen Kirven with a gun and denied having given the written statement to the police. Y—— was also impeached by inconsistent statements as a sworn witness at a parole revocation hearing involving the incident. We hold that it was proper for the State to offer the investigating officer's testimony that Y——'s statement was not proved false by further investigation.

However, the officer's statement, "So as far as I'm concerned she was truthful then and she is truthful—" is of a different character. This Court has held that it is impermissible to offer evidence that one witness believes another witness is telling the truth in reciting the events of the case. *Kirkpatrick v. State*, 747 S.W.2d 833 (Tex. App.—Dallas, 1987, no pet.).

■ We note that the statement made by the officer was not in response to the question asked. As a general rule, where prejudicial information in an unresponsive answer is inadvertently placed before a jury, an instruction by the trial court to disregard such answer will be sufficient to cure virtually any error. *Williams v. State*, 643 S.W.2d 136, 138 (Tex.Crim.App. 1982); *Moore v. State*, 658 S.W.2d 312, 314–15 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd). It is only where it appears that the improperly admitted testimony is clearly calculated to inflame the minds of the jury and is of such potent character as to suggest the impossibility of withdrawing the impression produced within the minds of the jurors that an instruction to disregard will not cure any error. *Moore*, 658 S.W.2d at 315. We hold that the statement was not clearly calculated to inflame the minds of the jurors. Thus, any error was cured by the trial court's prompt instruction to disregard. Because the trial court did not err in overruling Kirven's

motion for mistrial, we overrule point of error number two.

Having overruled both points of error, the trial court's judgment is affirmed.