Raymond Devaunt **BEASLEY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 05–91–00647–CR.

Court of Appeals of Texas, Dallas.

Aug. 18, 1992.

John H. Hagler, Dallas, for appellant.

Donald G. Davis, Dallas, for appellee.

Before BAKER, BURNETT and ROSENBERG, JJ.

## OPINION

BAKER, Justice.

The State charged appellant with illegal investment in cocaine. A jury found appellant guilty as charged. The jury assessed a ninety-nine-year sentence and a one million dollar fine. Appellant contends that the evidence is insufficient to convict him and that the trial court erred in admitting evidence of extraneous offenses. He contends that the State improperly bolstered a witness and that the trial court erred in admitting that witness's testimony. He claims that the State improperly struck minority jurors and that the trial court improperly allowed evidence of unadjudicated extraneous offenses during the punishment phase. We overrule these points of error. We affirm the trial court's judgment.

### THE ILLEGAL INVESTMENT

This case involves a "reverse sting." Through an informant, two Dallas narcotics officers learned that appellant wanted to buy bulk cocaine. The officers met appellant and the informant at a Dallas restaurant. The appellant told the officers that he wanted to buy two kilos of cocaine. The officers told appellant that the cost was $20,000 per kilo.

Appellant told the officers that he was looking for a steady supply of kilos. During this initial meeting, appellant told the officers that he was a "drug enforcer," that he had access to high explosives and high-caliber weapons, and that he had made $80,000 in a Fort Worth drug transaction. Later that evening appellant told the officers that he and his Shreveport associates wanted to buy three kilos of cocaine. One of the officers and appellant had a three-way telephone conversation with appellant's associate from Shreveport. They agreed on a final price of $67,000 for three kilos and arranged for the exchange to take place the next day.

Dallas police set up surveillance with a tactical squad and other officers at the location of the proposed sale. The two undercover officers met appellant and his associate at the restaurant parking lot. One of the officers looked into appellant's car and asked to see the money. Appellant's associate showed the officer a plastic garbage bag filled with money. The confederate got out of appellant's car and went to the officer's car to see the cocaine.

After counting part of the money and showing appellant's associate the cocaine, the tactical officers made the bust and arrested all the parties. The officers seized $65,654 at the scene. The police also arrested three people in another car who fled the scene when the officers arrested appellant and his associate.

## THE GUILT/INNOCENCE PHASE OF THE TRIAL

### A. Was *Batson*[1] Error Committed During Jury Selection?

In his sixth point of error, appellant claims the State struck two black prospective jurors for racially motivated reasons. Appellant objected to the State striking jurors number two, Gladys Lightfoot, and number ten, Cornelia Ford. Appellant was black as were Lightfoot and Ford.

The prosecutor explained his reasons for striking Lightfoot and Ford. The prosecutor said he struck Lightfoot because she had a son who was in a drug rehabilitation program. The prosecutor considered her a dangerous juror for this type of case. The prosecutor said he struck Ford because she had an uncle who was in the penitentiary for a drug offense. The prosecutor said he considered this juror risky, so he struck her. The trial court overruled appellant's *Batson* motion.

Appellant contends that the prosecutor's reasons for striking the two jurors were not legitimate and that the State did not sustain its burden of showing it exercised its strikes for racially neutral reasons. The State argues that the prosecutor's stated reasons were racially neutral and that the evidence supported the trial court's ruling on the motion.

#### 1. Applicable Law

■ When an accused claims the State's strikes were racially motivated, he makes a prima facie case of purposeful discrimination by showing that he is a member of a cognizable race, that the State struck members of his race, and that other facts and circumstances tend to show racially motivated jury strikes. *See Batson v. Kentucky*, 476 U.S. 79, 96, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986); *Tompkins v. State*, 774 S.W.2d 195, 200 (Tex.Crim.App.1987), *aff'd by an equally divided court*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989). Once an accused makes a prima facie case of purposeful discrimination, the burden shifts to the State to come forward with racially neutral explanations for challeng-

ing the jurors. *See Tompkins*, 774 S.W.2d at 200; *Miller–El v. State*, 790 S.W.2d 351, 354 (Tex.App.—Dallas 1990, pet. ref'd).

■ The prosecutor must articulate a racially neutral explanation related to the particular case on trial. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723; *Tompkins*, 774 S.W.2d at 200. The trial judge must evaluate the reasons given by the prosecutor in light of the circumstances of the trial to determine whether the prosecutor's explanations are merely a pretext. *See Whitsey v. State*, 796 S.W.2d 707, 713 (Tex.Crim. App.1989); *Keeton v. State*, 749 S.W.2d 861, 868 (Tex.Crim.App.1988).

■ A reviewing court must give deference to the trial court's findings. We do not reverse the trial court's conclusions on the *Batson* hearing unless we determine they are "clearly erroneous." *See Whitsey*, 796 S.W.2d at 727. Some courts have held that a prospective juror having family members with criminal problems is a racially neutral reason for exercising a peremptory challenge. *See Munson v. State*, 774 S.W.2d 778, 779–80 (Tex.App.—El Paso 1989, no pet.); *Sims v. State*, 768 S.W.2d 863, 865 (Tex.App.—Texarkana 1989), *pet. dism'd per curiam*, 792 S.W.2d 81 (Tex. Crim.App.1990); *Yarbough v. State*, 732 S.W.2d 86, 90 (Tex.App.—Dallas 1987), *vacated on other grounds per curiam*, 761 S.W.2d 17 (Tex.Crim.App.), *and* 761 S.W.2d 18 (Tex.Crim.App.1988).

#### 2. Application of the Law to the Facts

■ This case was drug related. During voir dire, juror Lightfoot said she had a son in drug rehabilitation. Juror Ford said she had an uncle in the penitentiary for a drug-related offense. The reasons given by the State for challenging the jurors were related to the facts of this case.

The State questioned both jurors about relatives involved in drug-related criminal matters. We conclude that the reasons articulated by the State for striking Lightfoot and Ford were racially neutral. *Yarbough*, 732 S.W.2d at 90; *Sims*, 768 S.W.2d at 865; *Munson*, 774 S.W.2d at 779–80. The record supports the trial court's ruling.

---

**1.** *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

We hold that the trial court's ruling was not clearly erroneous. *See Whitsey,* 796 S.W.2d at 727. We overrule appellant's sixth point of error.

### B. Extraneous Offenses

In his second point of error, appellant contends that the trial court erred in admitting evidence of extraneous offenses. Appellant complains about the testimony of two police officers. The two police officers said appellant told them he was a drug enforcer, that he had access to high explosives and high-caliber weapons, and that he had made $80,000 in a drug-related incident in Fort Worth. Appellant argues that admitting this evidence resulted in reversible error since it referred to unrelated extraneous offenses.

The State notes that this trial was an illegal investment prosecution involving the proposed sale of a large quantity of cocaine. The State asserts appellant's bragging was closely interwoven with the offense and showed the context of that offense. The State argues that the undercover officers were trying to convince appellant that they were drug dealers. The State maintains that appellant made these statements about his involvement in the drug culture to convince the officer that he was who he said he was. The State contends it was not error to admit the evidence because it was relevant to the offense.

### 1. The Applicable Law

Rule 404(b) of the Texas Rules of Criminal Evidence provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *See* TEX.R.CRIM.EVID. 404(b). Rule 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. *See* TEX.R.CRIM.EVID. 403.

■ The general rule is that an accused may not be tried for some collateral crime or for being a criminal generally. *Williams v. State,* 662 S.W.2d 344, 346 (Tex.Crim.App.1983). However, evidence of other crimes, wrongs, or acts may be admissible if it has relevance apart from its tendency to prove the character of a person to show that he acted in conformity therewith. TEX.R.CRIM.EVID. 404(b); *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex. Crim.App.1990) (op. on reh'g). A party may introduce such evidence where it logically serves to make more probable or less probable an elemental fact; where it serves to make more probable or less probable an evidentiary fact that inferentially leads to an elemental fact; or where it serves to make more probable or less probable defensive evidence undermining an elemental fact. TEX.R.CRIM.EVID. 401, 404(b); *Montgomery,* 810 S.W.2d at 387. Extraneous offense evidence that logically serves any of these purposes is relevant beyond its tendency to prove the character of a person to show that he acted in conformity therewith. *Montgomery,* 810 S.W.2d at 387. The trial court must first determine whether the extraneous offense is relevant. *Montgomery,* 810 S.W.2d at 387–88. Second, the trial court must determine whether its probative value is substantially outweighed by the danger of unfair prejudice. TEX.R.CRIM.EVID. 403, 404(b); *Montgomery,* 810 S.W.2d at 388.

■ When a party attempts to introduce evidence of other crimes, wrongs, or acts, the opposing party must object in a timely fashion to preserve error on appeal. The first objection should be under rule 404(b). The opposing party should urge that the evidence is not relevant because it constitutes evidence of an extraneous offense or extraneous misconduct. TEX.R.APP.P. 52(a); *Montgomery,* 810 S.W.2d at 387. Once that objection is made, the proponent of the evidence must satisfy the trial court that the evidence has relevance apart from its tendency to prove character of a person in order to show that he acted in conformity therewith. TEX.R.CRIM.EVID. 404(b); *Montgomery,* 810 S.W.2d at 387.

■ Once the trial court rules that the evidence has relevance apart from character conformity, the court has ruled on the full extent of the opponent's extraneous-

offense objection. Such an objection preserves error only on the issue of whether the evidence was admissible under rule 404(b). *Montgomery*, 810 S.W.2d at 388. It is incumbent upon the opponent of the evidence to then object that the evidence, although relevant, should not be admitted because its probative value is substantially outweighed by the danger of unfair prejudice. Tex.R.Crim.Evid. 403; *Montgomery*, 810 S.W.2d at 388.

If the trial court determines that the evidence of that extraneous offense has relevance apart from character conformity, the court should admit the evidence absent the opponent's further objection on prejudicial grounds. *Montgomery*, 810 S.W.2d at 389. If this objection is made, the trial court must weigh the probativeness of the evidence against its potential for unfair prejudice, that is, the tendency of the evidence to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one. *Montgomery*, 810 S.W.2d at 389.

The trial court must determine whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under rule 403. *Montgomery*, 810 S.W.2d at 372. The court should weigh the following factors: (1) its inherent probativeness, that is, how compellingly evidence of the extraneous misconduct serves to make more or less probable a fact of consequence; (2) the strength of the proponent's evidence to show that the opponent in fact committed the extraneous conduct; (3) the potential of the extraneous conduct to impress the jury in some irrational but nevertheless indelible way; (4) the amount of trial time needed by the proponent to develop evidence of the extraneous misconduct such that the jury's attention is diverted from the charged offense; and (5) how great is the proponent's "need" for the extraneous misconduct? *Montgomery*, 810 S.W.2d at 390.

The last inquiry includes three subparts: (1) does the proponent have other available evidence to show the fact of consequence that the extraneous misconduct is relevant to show; (2) if so, how strong is that other evidence; and (3) is the fact of consequence related to an issue that is in dispute? *Montgomery*, 810 S.W.2d at 390.

## 2. Standard of Review—The Appellate Court's Function

The trial court's role in deciding relevancy and balancing probativeness and prejudice is a matter of the trial court's discretion. The reviewing court must give the trial court wide latitude to exclude, or, particularly in view of the presumption of admissibility of relevant evidence, not to exclude evidence of extraneous misconduct as the trial court sees fit. So long as the trial court operates within the bounds of its discretion, we should not disturb the trial court's decision whatever it may be. *Montgomery*, 810 S.W.2d at 390.

The abuse-of-discretion standard applies to the trial court's decision in both the relevancy determination under rule 404(b) and the prejudice-versus-probativeness balancing test under rule 403. *Montgomery*, 810 S.W.2d at 391. We should not conduct a de novo review of the record and make a wholly independent judgment of the two issues. *Montgomery*, 810 S.W.2d at 392.

## 3. Application of the Law to the Facts

Appellant contends that admitting the testimony that appellant was a drug enforcer with access to high explosives and high-caliber weapons was reversible error because it referred to unrelated extraneous offenses. He contends that the evidence did not resolve any issue before the jury because it was offered during the State's case-in-chief. Appellant objected to the testimony on extraneous offense grounds. This objection implicates only relevancy under rule 404(b) of the Texas Rules of Criminal Evidence. *Montgomery*, 810 S.W.2d at 388. Thus, the issue is whether the evidence had a tendency to make the existence of any fact of consequence to the case more probable or less probable than it would be without the evidence. *Montgomery*, 810 S.W.2d at 391; Tex.R.Crim.Evid. 401.

The State argues that this was an illegal investment prosecution involving the proposed sale of a large quantity of cocaine to a drug dealer. The evidence came about from the undercover officer's efforts to convince appellant that the officer was also a drug dealer. Additionally, the evidence showed that appellant made the statements during the initial part of an ongoing sequence of contacts between him and the officers leading to the reverse sting. Under all the facts and circumstances, we cannot conclude that the trial court abused its discretion in determining the evidence relevant to the ultimate issue of whether appellant was guilty of illegal investment in a controlled substance. We overrule appellant's point of error number two.

### C. The Volunteered Answer—"The Codefendants Got Fifty Years"

In his third point of error, appellant contends that the volunteered answer of the State's witness that the codefendants received fifty-year sentences was reversible error. Appellant objected on the grounds that what the jury did in the trial of his codefendants was immaterial and irrelevant in his trial. The court sustained appellant's objection, instructed the jury not to consider the witness's answer, but denied appellant's motion for mistrial.

The State argues that the trial court's instruction to the jury to disregard rendered harmless any error.

### 1. Applicable Law

Ordinarily, the disposition of the case against codefendants never becomes admissible in the trial of another codefendant. *See Rodriquez v. State*, 552 S.W.2d 451, 454–55 (Tex.Crim.App.1977). However, an instruction to disregard usually renders harmless any error in a circumstance such as this. *See Woods v. State*, 653 S.W.2d 1, 5 (Tex.Crim.App.1982) (op. on reh'g); *Campos v. State*, 589 S.W.2d 424, 428 (Tex. Crim.App. [Panel Op.] 1979).

### 2. Application of the Law to the Facts

We hold that the volunteered answer was not so prejudicial and that the trial court's instruction to the jury cured the error. *Woods*, 653 S.W.2d at 5. We overrule appellant's third point of error.

### D. The State's Expert Witness

In his fourth point of error, appellant contends that the prosecutor improperly bolstered the testimony of the State's expert witness with evidence that the witness received local and national awards for law enforcement. In his fifth point of error, appellant contends that the trial court erred by allowing the State's witness to testify about drug trafficking. Appellant argues that the State charged him with illegal investment and that testimony about drug trafficking was immaterial and irrelevant. On appeal, he contends that the testimony was prejudicial.

### 1. Applicable Law

#### a. Bolstering

Bolstering occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party. *McKay v. State*, 707 S.W.2d 23, 33 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Kirven v. State*, 751 S.W.2d 212, 215 (Tex.App.—Dallas 1988, no pet.).

#### b. Expert Testimony

Expert testimony is admissible if the witness is competent and qualified to testify, the testimony will assist the jurors in evaluating and understanding matters not within their common experience, and the probative value of the testimony outweighs its prejudicial effect. TEX.R.CRIM. EVID. 702; *Perryman v. State*, 798 S.W.2d 326, 330 (Tex.App.—Dallas 1990, no pet.). In reviewing the admission of expert testimony, our standard of review is whether the trial court abused its discretion in admitting the expert's testimony. *Sterling v. State*, 800 S.W.2d 513, 521 (Tex.Crim.App. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991).

## 2. Application of the Law to the Facts

### a. Bolstering

The State offered Sergeant David McCoy of the Dallas Police Department as an expert witness. While establishing the witness's credentials as an expert, the following was said:

Q. [PROSECUTOR]: What recognition or awards, if any, have you received in your field of work?

[DEFENSE COUNSEL]: Excuse me. I'm going to object on the grounds that this is bolstering and self-serving.

THE COURT: Overruled.

Q. [PROSECUTOR]: You can answer the question.

A. I received department commendations, and I have also received in 1989 an award from the International Association of Chiefs of Police.

Appellant contends that this testimony was bolstering because the State elicited it to enhance the witness's credibility in the jurors' eyes. Appellant argues that it was improperly admitted and constitutes reversible error.

The State argues that this testimony was part of its proof of the witness's credentials as an expert. The State asserts that it is not enough to show merely that the purported expert was a police officer but that he possessed special knowledge on the questions he was going to answer. *See Sattiewhite v. State*, 786 S.W.2d 271, 291 (Tex.Crim.App.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 226, 112 L.Ed.2d 181 (1990). The State maintains that the evidence merely shows the witness was accepted by his peers as one possessed of special knowledge of the subject matter about which he was to testify.[2] The State contends that the evidence went to the witness's qualifications and was a preliminary question for the trial court's determination.

Although the officer's testimony came during the State's direct examination in its case-in-chief, and although it may have been improper, we conclude under the facts of this case that the error, if any, was harmless. Tex.R.App.P. 81(b)(2); *Harris v. State*, 790 S.W.2d 568 (Tex.Crim.App.1989). We hold the trial court did not abuse its discretion in admitting the testimony. We overrule point of error number four.

### b. The Expert Testimony

The State called McCoy to testify as an expert in the use and distribution of controlled substances. Appellant objected to the testimony on the grounds that it was immaterial and irrelevant. The basis for appellant's objection was that because he was charged with illegal investment, drug trafficking was not relevant to the issue before the jury. The trial court overruled the objection. McCoy then testified about the distribution of cocaine, the price of cocaine, and the profits involved from cocaine trafficking.

In the trial court, appellant objected on relevancy grounds. On appeal, appellant argues that the testimony was highly prejudicial. Appellant has preserved only his relevancy objection. *See Montgomery*, 810 S.W.2d at 388. Questions of admissibility under rules 702 and 401 are for the trial court in the first instance. *See* Tex.R.Crim. Evid. 401, 702. So long as the record provides a rational basis to support the trial court's decision that the expert testimony will assist the jury, the reviewing court cannot conclude de novo that the evidence is inadmissible. *See Ortiz v. State*, 834 S.W.2d 343, 348 (Tex.Crim.App.1992). The State charged appellant with illegal investment of cocaine. The evidence showed that he and his confederates attempted to buy three kilos of cocaine from the undercover officers. The expert testimony would assist the jury to attain perspective and knowledge of the world of illegal drug dealing. *See Kemner v. State*, 589 S.W.2d 403, 406 (Tex.Crim.App. [Panel Op.] 1979). We conclude that the trial court did not

---

**2.** The State does not explain how the blanket statement that the officer received department commendations and an award from the International Association of Chiefs of Police without more shows that the awards had any connection with the witness's special knowledge of the subject he testified about. Because the evidence was elicited on direct examination and was not directly connected with the witness's expert knowledge, it is difficult to avoid the conclusion that the testimony was in fact elicited to enhance his credibility in the eyes of the jurors.

abuse its discretion in determining the evidence was relevant. TEX.R.CRIM.EVID. 702; *Perryman,* 798 S.W.2d at 330. We overrule appellant's fifth point of error.

### E. Is the Evidence Insufficient?

In his first point of error, appellant contends that the evidence is insufficient to support the conviction under the law of parties because the trial court submitted only an abstract instruction on the law of parties and did not apply that instruction in the application part of the charge. Appellant argues that if he was guilty, he was only guilty as a party to the offense of illegal investment. Appellant bases this claim on the fact that a codefendant brought the money to Dallas to invest in the cocaine. He argues that because he did not furnish the money, the jury could not find him guilty as a primary actor.

The State argues that the evidence was sufficient to support his conviction because it showed that appellant was guilty as a primary actor.

#### 1. Standard of Review

In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. We determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Turner v. State,* 805 S.W.2d 423, 427 (Tex.Crim.App.), *cert. denied,* — U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). The jury is the sole judge of the credibility of the witnesses and the weight given their testimony. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The jury is free to accept or reject all or a part of any witness's testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The jury is not required to believe even uncontroverted testimony. *Williams v. State,* 692 S.W.2d 671, 676 (Tex.Crim.App.1984).

#### 2. Applicable Law

The grand jury indicted appellant for the offense of illegal investment. *See* TEX.HEALTH & SAFETY CODE ANN. § 481.-126 (Vernon Supp.1992). The indictment reads:

> knowingly and intentionally finance and invest funds, to wit: current money of the United States of America, and defendant knew and believed that said funds were intended to further the commission of the offense of delivery of Cocaine, in an amount by aggregate weight including any adulterants of more than 28 grams....

The jury charge included an abstract definition of the law of parties. However, the law of parties was not included in the application part of the charge.

We measure the sufficiency of the evidence against the entire jury charge. *Garrett v. State,* 749 S.W.2d 784, 802–03 (Tex. Crim.App.1986) (op. on reh'g). A charge that fails to apply a theory of law to the facts of the case is insufficient to authorize conviction on that theory, even where the theory of law is abstractly defined in the charge. The charge in this case does not authorize the jury to convict appellant as a party. *Jones v. State,* 815 S.W.2d 667, 670 (Tex.Crim.App.1991). We determine whether the evidence is such that a rational trier of fact could find appellant guilty of the offense as a primary actor. *See Walker v. State,* 823 S.W.2d 247, 248 (Tex.Crim. App.1991) (per curiam), *cert. denied,* — U.S. ——, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992).

#### 3. Application of the Law to the Facts

Viewed in the light most favorable to the verdict, an informant introduced appellant to two Dallas narcotics officers. The officers met appellant at a Dallas restaurant. Appellant told the officers that he wanted to buy two kilos of cocaine. The officers quoted a price of $20,000 per kilo. Appellant indicated that he was looking for a steady supply of kilos. Appellant told the officers that he would have to contact his associates in Shreveport.

Appellant arranged the transaction during later telephone conversations with one of the officers. Appellant ordered three kilos. The officer and appellant conducted a conference call with appellant's associate

in Shreveport. The associate agreed to come to Dallas with the money to buy three kilos of cocaine.

The parties arranged the sale for the next day at another restaurant. Appellant and the Shreveport associate arrived at the restaurant to complete the transaction. The associate showed one of the officers a garbage bag containing the money. Appellant stayed in his car while the officer counted the money. Appellant's associate got into the officer's car to look at the three kilos of cocaine. The tactical squad that had the scene under surveillance then arrested everyone including the officers. The police seized $65,654. The police also arrested three other people who fled the scene in another car.

Appellant argues that because the Shreveport associate brought the money to Dallas to invest, the evidence shows that the money did not belong to appellant. He argues that under these facts, the State was forced to rely on the law of parties to secure a conviction. Because of the failure of the charge to apply the law of parties to the application paragraph, appellant maintains that the jury could not find him guilty. Appellant relies on *Walker* and *Jones* to support this argument.

■ The flaw in appellant's argument is that the statute does not limit itself to an accused's investment of his personal funds. As argued by the State, the terms "finance" and "invest" are broad enough to encompass appellant's personal conduct. *See* TEX.HEALTH & SAFETY CODE ANN. § 481.-126 (Vernon Supp.1992); *Jordan v. State,* 816 S.W.2d 89, 92 (Tex.Crim.App.1991). "Finance" is defined "to raise or provide funds or capital for" or "to furnish with necessary funds." *Jordan,* 816 S.W.2d at 92. The term "to raise" connotes the gathering together or the finding of money for a particular purpose. The evidence shows that appellant was the person who expressed a desire to purchase three kilos of cocaine. Appellant was the person who arranged for his associate to bring money from Shreveport to buy the cocaine from the officers. Appellant's actions amounted to "raising" funds for the purchase of cocaine. We hold the evidence sufficient to support the conviction of appellant as a

primary actor. *Jordan,* 816 S.W.2d at 92; *see also Walker,* 823 S.W.2d at 248. We overrule appellant's first point of error.

## THE PUNISHMENT PHASE OF THE TRIAL—EXTRANEOUS OFFENSES

In his seventh, eighth, and ninth points of error, appellant contends that the trial court improperly allowed the State to offer evidence of unadjudicated extraneous offenses.

### A. Applicable Law

■ Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the State and the defendant as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, his general reputation, and his character. The term "prior criminal record" means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged. TEX.CODE CRIM.PROC.ANN. art. 37.-07, § 3(a) (Vernon Supp.1992).

■ Evidence of specific unadjudicated conduct is inadmissible at the punishment stage of the trial to attack the "suitability" of the accused for probation when the accused lodges a timely objection. *Kingsley v. State,* 784 S.W.2d 688, 689 (Tex.Crim.App.1990) (per curiam); *Murphy v. State,* 777 S.W.2d 44, 67 (Tex.Crim.App. 1988) (op. on reh'g). Under article 37.07, section 3(a), evidence of extraneous unadjudicated offenses, even if deemed relevant to sentencing by the trial court, must meet two tests. First, the evidence must be permitted by the rules of evidence. Second, if the evidence is part of a defendant's prior criminal record, as it has been considered in the past, the evidence must comply with the statutory definition of that term. *Grunsfeld v. State,* 813 S.W.2d 158, 166 (Tex.App.—Dallas 1991, et. granted) (en banc). However, extraneous unadjudicated offenses may be admissible if the accused

opens the door to the admission of such evidence. *Ortiz*, 834 S.W.2d at 346; *Murphy*, 777 S.W.2d at 67.

In our view, the *Montgomery* criteria apply when we determine whether admission of the unadjudicated extraneous offenses is permitted by the rules of evidence. *See Montgomery*, 810 S.W.2d at 387–93.

### B. The Informant's Testimony

■■■ Over appellant's "extraneous offense" objection, the trial court permitted the informant to testify that appellant bragged about being a hit man. She testified that appellant possessed a high-caliber assault weapon. Finally, she testified that appellant told her that he knew where she and her family lived and that if anything happened to him, she would be "taken care of." The informant interpreted this statement to mean appellant would have her killed. Appellant argues that the evidence was inadmissible because it was not permitted by the rules of evidence. Appellant relies on *Grunsfeld*.

First, we have already held that the evidence about appellant being a hit man and possessing high-caliber weapons was properly admitted at the guilt/innocence phase of the trial. Because it was already before the jury, it was not error to allow the informant to testify to the same evidence at the punishment phase.

Appellant's objection to the other part of the informant's testimony was that it was an extraneous offense. This objection preserves the question of relevancy under rule 404(b). Tex.R.Crim.Evid. 404(b); *Montgomery*, 810 S.W.2d at 387–88. As previously stated, *Montgomery* requires a second objection to invoke the more-prejudicial-than-probative inquiry set out in rule 403. Tex.R.Crim.Evid. 403; *Montgomery*, 810 S.W.2d at 388. Rule 403 favors admissibility of relevant evidence. We presume that relevant evidence is more probative than prejudicial. If the trial court determines evidence of other crimes, wrongs, or acts, has relevance apart from character conformity, the trial court should admit the evidence absent a further objection by the opponent of the evidence. *Montgomery*, 810 S.W.2d at 389. We do not engage in a de novo review of the trial court's exercise of its discretion in determining relevancy of offered evidence. *Montgomery*, 810 S.W.2d at 390–91. We must give the trial court wide latitude to determine the relevancy of proffered evidence. We may not disturb the trial court's decision unless the court clearly abuses its discretion. *Montgomery*, 810 S.W.2d at 390. We conclude that appellant has not demonstrated a clear abuse of discretion under this record. *Montgomery*, 810 S.W.2d at 391. We overrule appellant's seventh point of error.

### C. The Aunt's Testimony and the State's Cross-examination

■■■ Appellant called his aunt to prove his eligibility for probation. On direct examination, over the State's hearsay objection, the aunt testified that appellant had never been convicted of a felony. On cross-examination, the State developed the following testimony:

Q. [PROSECUTOR]: So you—you don't ask and he doesn't tell you what kind of trouble he gets into, does he?

A. [THE AUNT]: He doesn't get in any trouble.

Q. [PROSECUTOR]: I'm sorry?

A. [THE AUNT]: He's not in—he doesn't get into any trouble that's necessary to discuss.

After a hearing out of the jury's presence, the court allowed the State to question the witness about her knowledge of specific extraneous offenses of appellant. We conclude that the aunt's testimony opened the door to evidence of appellant's suitability for probation. The State may present evidence in rebuttal. *Ortiz*, at 346; *Murphy*, 777 S.W.2d at 62–63. We conclude that the trial court did not err in allowing this testimony. We overrule appellant's eighth point of error.

### D. The Officer's Testimony

After the aunt testified, the State called an Arlington police officer. Over appellant's "extraneous offenses" objection, the court permitted the officer to testify that he arrested appellant for carrying a pistol. The officer testified that when he took

appellant to jail, cocaine was found in appellant's shoe. Again, the aunt's testimony opened the door for the officer's testimony. *Ortiz,* at 346; *Murphy,* 777 S.W.2d at 62–63. We overrule appellant's ninth point of error.

We affirm the trial court's judgment.