Opinion issued June 19, 2003







 











In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00580-CR
____________
 
MICHAEL HOUSE, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 879,726
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Michael House, guilty of aggravated robbery, and the
trial court assessed his punishment at confinement for 50 years. In his sole point of
error, appellant contends that the evidence was factually insufficient to support his
conviction. We affirm.
Facts
          Maria Martinez, medical assistant to Dr. Men Shern Liu, testified that, on the
evening of June 8, 2001, appellant twice came into Dr. Liu’s clinic and asked her and
Dr. Liu questions about a used car lot next to the clinic. When appellant returned to
the clinic a third time, he complained to Martinez about sinus problems and he signed
Dr. Liu’s waiting list as “Sedrick Thomas.” Appellant then told her “this is a
robbery,” pointed a handgun at her chest, and jumped through the receptionist’s
window. Appellant then asked for Dr. Liu, and Martinez took appellant to the x-ray
room, where Dr. Liu was tending to a patient. 
             Dr. Liu testified that when appellant entered the x-ray room, he pointed the
handgun at Dr. Liu’s head and told him to lie down on the floor. Dr. Liu gave
appellant his wallet, and then Dr. Liu lay face down on the floor. Appellant then hit
Dr. Liu in the back of his head several times with the handgun, and Dr. Liu “passed
out.”
          Martinez testified that appellant then took her into the hallway and told her to
take off her clothes. When Martinez refused to remove her bra, appellant struck her
in the head and she then disrobed completely. Appellant blindfolded her and then
sexually assaulted her by fondling her and penetrating her vagina with his fingers. 
After the sexual assault, Martinez heard someone calling Dr. Liu’s name from the
front of the clinic. Appellant left her in the hallway and went to see who was in the
waiting room.
          Ben Pheffer, the complainant in this case, testified that, on that evening, he
went to see Dr. Liu to discuss real estate. When Pheffer arrived in the waiting room,
he rang the receptionist bell. After a few minutes, appellant appeared and told
Pheffer that Dr. Liu would see him. Pheffer walked into the hallway and saw
Martinez, who was disrobed. Appellant then pointed the handgun at Pheffer and said
“this is a robbery.” Appellant forced Pheffer into the x-ray room, where Dr. Liu was
lying unconscious, and ordered Pheffer to “lay [sic] down flat on the floor.” Pheffer
kneeled on the ground, gave appellant his wallet, and then appellant hit Pheffer “a
couple times in the head, trying to knock [Pheffer] out.” Pheffer, in an attempt to get
appellant to leave, told appellant that he had a nice car outside and he gave appellant
his car keys. Appellant then brought Martinez into the room, stated that “he was
going to kill” them, and then left the clinic and drove away in Pheffer’s green car.
          Houston Police Officer C. Pena testified that, on June 13, 2001, while he was
patrolling a trailer park and checking license plates for warrants and stolen cars, he
saw appellant in the driver’s seat of a green car. He noticed that a woman, Tamara
West, was seated in the passenger seat. As Pena ran the license plate of the green car
on his computer to check for violations, Pena saw West look at him and then “kind
of looks [sic] down real quick, which is very suspicious.” After Pena learned that the
car was stolen, he turned his patrol car around and saw that appellant and West had
gotten out of the car and were walking away. Pena then arrested appellant and West. 
Appellant told Pena that the green car belonged to West.
          Houston Police Officer Farias testified that, after appellant’s arrest, less than
one week after the aggravated robbery, he placed appellant in a live lineup with four
other men “with the same characteristics.” Dr. Liu identified appellant in the lineup
as the robber and was “pretty sure” that his identification was correct. Pheffer also
identified appellant in the lineup and had “no doubt” that appellant was the robber. 
Martinez did not view the live lineup because she was “scared.” She later viewed a
videotape of the lineup and tentatively identified appellant, but she stated she was
“not sure.” However, at trial, Martinez positively identified appellant as the robber
and stated that she was “100 percent” positive of her identification.
          Appellant testified that he was at the apartment of his brother’s girlfriend on
the day of the robbery, and that he did not leave the apartment because of the flooding
caused by tropical storm Allison. Appellant stated that West came by his brother’s
apartment on the day that he was arrested, picked him up in “the green car,” and they
drove around Houston. Appellant denied ever going to Dr. Liu’s medical clinic and
stated that he did not rob anyone there. 
          Tamara Bradley, the girlfriend of appellant’s brother, testified that appellant
was at her apartment all day on June 8, 2001 and that he only left the apartment that
night to get food. Johnnel House, appellant’s brother, testified that appellant was
with him at Bradley’s apartment all day on June 8, 2001. Roberto Gutierrez, House’s
friend, testified that he went to Bradley’s apartment on the night of June 8, 2001, and
he saw appellant in the apartment. When Gutierrez left the apartment with appellant
to get something to eat, a woman drove up in a green car, and appellant talked to her
for 10 minutes before she drove away.
          William Simpson, a handwriting examiner, testified that, in his opinion, the
signature of “Sedrick Thomas” on Dr. Liu’s waiting list was not written by appellant. 
Simpson stated that, after comparing an exemplar of appellant’s handwriting with the
purported signature of “Sedrick Thomas,” he determined that the signatures were “not
by the same hand.” However, Simpson also stated that he had never taken a
handwriting examination class and he did not belong to any associations, such as the
America Board of Document Examiners, because they were a “refuge for the
incompetent.” Moreover, Simpson did not observe appellant write the exemplar that
Simpson used to form his opinion. 
          Houston Police Officer David Cole testified that he took a written statement
from appellant after his arrest, and appellant stated that, on June 8, 2001, he was at
a hospital all day visiting a friend. Appellant later testified that the written statement
was not true, and that he went to the hospital later “at the time of the flood.” 
Factual Sufficiency
          We review the factual sufficiency of the evidence by examining all of the
evidence neutrally and asking whether the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence
in the jury’s determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000). 
          Appellant specifically contends that “the verdict is so contrary to the weight of
the evidence as to be wrong or unjust” because (1) Pheffer was the only one who
made a positive identification of appellant, (2) it was West, not appellant, whose
demeanor at the time of their arrest “indicated a lack of equanimity,” (3) the
testimony of his witnesses established his alibi on the day of the robbery, (4) there
was “no evidence such as fingerprints or bodily fluids which could link appellant to
the scene,” and (5) “the uncontradicted testimony of the handwriting examiner
established that the person who signed in as ‘Sedrick Thomas’ at the doctor’s office
. . . could not have been appellant.” 
          Here, the record reveals that all of the victims of the robbery were able to see
appellant’s face, observe his mannerisms, and hear his voice. Although Officer Farias
testified that Dr. Liu’s identification was “strong tentative,” the record also indicates
that both Dr. Liu and Pheffer positively identified appellant during the live lineup,
which was made less than a week after the robbery. Although Martinez was not “100
percent sure,” she did identify appellant during her viewing of the videotape of the
lineup. Martinez also stated that it helped to see appellant in person because the
videotape was “not very clear.” Moreover, at trial, each of the three victims
positively identified appellant as their assailant. 
          The record further reveals that, when appellant was arrested, he was observed
in the driver’s seat of Pheffer’s stolen car five days after the robbery. Although
appellant testified that he lied to Officer Cole when he gave his written statement,
appellant, at trial, gave further conflicting testimony regarding his whereabouts on the
day of the robbery. To the extent that there was contradictory evidence, we note that
the jury, as the trier of fact, is the sole judge of the credibility of witnesses and the
weight to be given to the testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim.
App. 1986). Morever, the jury was free to believe or reject all or part of Simpson’s
testimony, because a fact finder is not required to believe uncontroverted testimony. 
Beasley v. State, 838 S.W.2d 695, 705 (Tex. App.—Dallas 1992, pet. ref’d).
          The proof of appellant’s guilt was not so obviously weak as to undermine
confidence in the jury’s verdict, nor was it greatly outweighed by contrary proof. 
Accordingly, we hold that the evidence was factually sufficient to support appellant’s
conviction.
          We overrule appellant’s sole point of error.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Taft, Jennings, and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).