NO. 07-99-0441-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

DECEMBER 5, 2001

_____


FRANK SCOTT LANDEN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 100TH DISTRICT COURT OF CHILDRESS COUNTY;

NO. 4220; HONORABLE DAVID M. MCCOY, JUDGE

_____

Before QUINN and REAVIS and JOHNSON, JJ.

Appellant Frank Scott Landen appeals from his conviction for burglary of a habitation and his sentence of two years incarceration. By ten issues he urges that (1) the trial court erred in denying his plea of double jeopardy; (2) his right to a speedy trial was violated; (3) the evidence was legally and factually insufficient for conviction; (4) the trial court erred in allowing all the testimony of a witness to be read back to the jury during trial; (5) the jury charge did not contain an accomplice witness instruction; and (6) he was

entitled to introduce into evidence the fact that the indictment against a co-defendant was dismissed. We affirm.

BACKGROUND

On the weekend of April 18 and 19, 1998, Mr. Gary Dewayne Burt and his wife left Childress to spend the weekend in Oklahoma City. When the Burts returned to their residence on Sunday, April 19, at about 11:15 p.m., they found the house had been burglarized. The money and receipts from Burt's My-T-Burger restaurant operations for Friday and Saturday were missing.

Stephen McMahan was one of appellant's acquaintances. On May 24, 1998, McMahan gave a written statement to the Childress Police Department in which he stated that on April 18, 1998, he drove appellant and Dory Wilks to the Burt's residence and then drove around for about fifteen to twenty minutes while appellant and Wilks were in the house.

Christopher Bushell was also an acquaintance of appellant's. On June 15, 1998, while he was in jail on an unrelated charge, Bushell told a Childress County deputy sheriff that appellant had confessed to committing the burglary of the Burt residence. According to Bushell, appellant came over to Bushell's house on Monday, April 20, 1998, and gave Bushell $350. Appellant informed Bushell that appellant obtained the money by burglarizing the Burt residence. Bushell stated that appellant described the particular method used to burglarize the residence.

2

On September 14, 1998, appellant was indicted for the offense of Burglary of a Habitation. The case first went to trial on June 15, 1999. Bushell was called as a witness by the State. Bushell testified, in violation of a Motion in Limine filed by appellant and granted by the trial court, that appellant used to buy marijuana from him. The trial judge granted appellant's request for a mistrial. Appellant then filed a Special Plea of Double Jeopardy. The trial court held a hearing on appellant's special plea on September 13, 1999. At the conclusion of the hearing the court denied the plea.

On September 14, 1999, the court again called the case for trial. The State announced "not ready" and requested a continuance due to the absence of a witness. This was the State's first and only request for a continuance. Appellant announced ready and moved the court for dismissal for failure to afford him a speedy trial. The court denied appellant's motion to dismiss, granted the State's request for continuance, and reset the trial for October 13, 1999.

On October 13, 1999, the court again called the case for trial and the case was tried. During this trial the State again called Bushell as a witness. At the conclusion of the State's direct examination of Bushell, two jury members indicated that they had not heard at least a portion of Bushell's testimony. Over appellant's objection, the trial court had all of Bushell's testimony read to the jury by the court reporter. The trial court gave the jury a limiting instruction before the reading of Bushell's testimony. The trial court also included a limiting instruction as to such testimony in the jury charge.

During trial, appellant attempted to introduce evidence of the State's indictment and dismissal of the indictment against appellant's co-defendant, Dory Wilks, for the burglary of the Burt house. The State objected, and the court sustained the objection and refused to admit the evidence.

Before the jury charge was read to the jury, appellant requested that the court include an accomplice witness instruction in regard to Bushell's testimony. The court denied the request.

The jury found appellant guilty and assessed punishment at a fine of $5000 and two years in the Texas Department of Criminal Justice-Institutional Division. As previously noted, appellant challenges his conviction by ten issues. We will address the issues in the order presented by appellant.

## ISSUE ONE: DOUBLE JEOPARDY

During appellant's first trial in June, 1999, Bushell was called as a witness by the State. During direct examination by the prosecutor, part of Bushell's answer to a question was that appellant "used to come over and buy marijuana from me." The trial court had previously granted appellant's motion in limine in regard to extraneous offenses. Appellant objected to the testimony as injecting an extraneous offense and moved for a mistrial on the basis that an instruction to the jury to disregard the testimony would not cure the harm. The trial court sustained the objection and granted the motion for mistrial.

4

Appellant asserts that re-trial constituted double jeopardy because the State's witness, after having been admonished not to refer to extraneous offenses, testified to an extraneous offense in front of the jury. He urges that although the State sought to prevent the testimony from being given by admonishing the witness before calling him to the stand, the State nevertheless should be held accountable for the mistrial. Thus, appellant reasons, his double jeopardy claim should be sustained pursuant to Article 1, § 14 of the Texas Constitution and Ex parte Bauder, 974 S.W.2d 729 (Tex.Crim.App. 1998).

If a defendant moves for and obtains a mistrial because a prosecutor either deliberately or recklessly crosses the line between legitimate adversarial conduct and "manifestly improper" conduct during trial, then re-trial is prohibited by the Texas Constitution. See TEX. CONST. art. I, § 14; Bauder, 974 S.W.2d at 732. As noted, however, appellant does not urge that overreaching trial conduct by the prosecutor necessitated appellant's motion for mistrial. See id. at 732-33 (Baird, J., concurring). Nor did the trial court reach such a conclusion.

Appellant cites no authority for his proposition that because a State's witness testifies to an extraneous offense by the defendant, after having been instructed by the prosecutor as to the trial court's ruling on a motion in limine as to such matter, further prosecution is prohibited by the double jeopardy provisions of the Texas Constitution. Appellant's motion for a mistrial was granted. We decline to hold that under the record before us the State should be charged with misconduct so as to warrant dismissal of the prosecution on double jeopardy grounds. We overrule appellant's first issue.

5

ISSUES 2 AND 3: SPEEDY TRIAL

By his second and third issues, appellant urges that his rights to a speedy trial under the United States Constitution and the Texas Constitution were violated. We disagree.

The Sixth Amendment to the United States Constitution guarantees the right to a speedy trial. See Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). The Texas Constitution also guarantees the right to a speedy trial. TEX. CONST. art. I, § 10. The test for whether speedy trial rights have been violated under the federal and state constitutions is the same. See Hull v. State, 699 S.W.2d 220, 221 (Tex.Crim.App. 1985).

Our review of speedy trial claims is de novo. See Johnson v. State, 954 S.W.2d 770, 771 (Tex.Crim.App. 1997). When reviewing the trial court's decision to grant or deny a defendant's claim that his right to a speedy trial has been violated, the appellate court must balance four factors: (1) the length of the delay, (2) reasons for the delay, (3) the defendant's assertion of the right, (4) any prejudice to the defendant resulting from the delay. Barker 407 U.S. at 530, 92 S.Ct. at 2192. No one factor is determinative of the result of the balancing process. Id. at 533, 92 S.Ct. at 2193.

A. Length of Delay

6

The primary burden to bring a defendant to trial rests upon the State. Id. at 527, 92 S.Ct. at 2190. Although no specific length of time before a defendant is brought to trial triggers a speedy trial analysis, some courts presume that a delay of eight months or longer is prejudicial. See Harris v. State, 827 S.W.2d 949, 956 (Tex.Crim.App. 1992) (en banc). The length of the delay is measured from the time the defendant is arrested or formally accused. Id. (*citing* United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971)).

The State has the initial burden of justifying a lengthy delay. Emery v. State, 881 S.W.2d 702, 708 (Tex.Crim.App. 1994). In light of a silent record, or one containing reasons insufficient to excuse the delay, it must be presumed that no valid reason for the delay existed. Turner v. State, 545 S.W.2d 133, 137-38 (Tex.Crim.App. 1976). Different reasons for the delay should be assigned different weights. A deliberate attempt to delay the trial in order to hamper the defense should weigh heavily against the State, while overcrowded dockets or negligence should weigh less heavily. Barker, 407 U.S. at 531, 92 S.Ct. at 2192. "Neutral" reasons not attributable to conscious design of the State to delay trial still weigh against the State because the ultimate responsibility for such conditions rests with the State. Id. Absent evidence of a reason for the delay, we presume no valid reason existed for the delay of appellant's trial. Mabra v. State, 997 S.W.2d 770, 777 (Tex.App.--Amarillo 1999, pet. ref'd).

Nine months elapsed between the date appellant was indicted and the date appellant's first trial began. The time between appellant's completion of discovery and the

7

June trial date, however, was approximately five months. Following the granting of his motion for mistrial in June, appellant did not object to the case being reset for the September docket, and the record reflects that the reason for the delay was due to scheduling conflicts of the prosecutor, the court and appellant's counsel. The length of delay factor weighs slightly in favor of appellant. Assuming, *arguendo*, that the delay was sufficiently long to trigger consideration of the remaining speedy trial factors, however, we next consider the reasons for the delay.

## B. Reasons for delay

Little evidence was offered at appellant's speedy trial motion hearing. The trial court took judicial notice of several times and events. Both the prosecutor and counsel for appellant made numerous statements of facts about the case history which could have been, but were not, disputed by opposing counsel. See Pitts v. State, 916 S.W.2d 507, 510 (Tex.Crim.App. 1996) (en banc). Those statements, and thus the record, reflect that some of the delay was attributable to appellant and some of the delay was attributable to the State. The delay between September, 1998, and January, 1999, was attributable to appellant because defense counsel was conducting discovery until January. On the other hand, the four month delay between January and June, 1999, is attributable to the State as there is no explanation about why appellant's case was not brought to trial during the months the court was in session in Childress County.[1] There is no assertion that the case

---

[1]Only three of those months truly weigh against the State as the trial court was not in session in Childress County for one of the four months.

was deliberately delayed following the mistrial in June, 1999. Appellant did not file a motion for speedy trial until the State sought its first continuance at the September, 1999, trial setting. There is no evidence that any of the delay attributable to the State was a deliberate attempt to hamper the defense. We conclude that the second factor does not weigh heavily against either the State or appellant.

## C. Assertion of right to speedy trial

A defendant who fails to demand a speedy trial does not forever waive the right. Barker, 407 U.S. at 528, 92 S.Ct. at 2191. Nevertheless, a defendant's failure to demand a speedy trial can be a strong indication that the defendant did not want one. Id. at 536, 92 S.Ct. at 2195; Harris, 827 S.W.2d at 957; Harlan v. State, 975 S.W.2d 387, 390 (Tex.App.–Tyler 1998, pet. ref'd). A defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may attenuate the strength of his claim. Phillips v. State, 650 S.W.2d 396, 401 (Tex.Crim.App. 1983).

Appellant's counsel completed pre-trial discovery in January, 1999. There is no evidence that appellant requested a trial setting or otherwise acted to bring his case to trial until June 15, 1999, when he announced ready for trial. On the other hand, there is no evidence that appellant requested a continuance or delayed the proceedings, at least until the setting of October, 1999, when he requested a continuance which the trial court denied. Appellant did not move for a speedy trial until September 14, 1999, when he lodged an oral motion following the State's first request for a continuance due to the

9

absence of a witness. In addition to making his oral motion for speedy trial, appellant filed a Motion to Dismiss for Failure of Speedy Trial. The trial court denied the motion to dismiss, granted the speedy trial motion and set the case for trial on the next month's trial docket, at which time the case proceeded to trial.

Appellant's failure to request a trial setting or otherwise assert his right to a speedy trial until September 14, 1999, approximately nine months after pre-trial discovery had been completed, and after the State had disclosed the absence of a witness and moved for a continuance, to a large degree negates his claim that he truly desired a speedy trial. Moreover, the record of the discussion between counsel and the trial judge following the mistrial in June, when the trial judge, the prosecutor and appellant's counsel reviewed their calendars to determine when the case could be set for re-trial, indicates that the 3-month period of time between June and the September trial date was not objectionable to appellant. Appellant's failure to assert his right until after the State asked for its first continuance, at which time he moved for a dismissal, weighs heavily against him. See Barker, 407 U.S. at 536, 92 S.Ct. at 2195; Harris, 827 S.W.2d at 957.

D. Prejudice by delay

The United States Supreme Court noted in its Barker opinion that trial delay can be harmful to a defendant in three ways: (1) pretrial incarceration may be oppressive; (2) the accused may be unduly subjected to anxiety and concern; or (3) the accused's defense may be impaired. Barker, 407 U.S. at 532, 92 S.Ct. 2193. It is the defendant's burden to

make a prima facie showing of prejudice. See Chapman v. Evans, 744 S.W.2d 133, 137 (Tex.Crim.App. 1988) (en banc). If such a showing is made by the defendant, the burden shifts to the State to prove that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay of trial. Ex parte McKenzie, 491 S.W.2d 122, 123 (Tex.Crim.App. 1973).

In support of appellant's motion to dismiss for failure to receive a speedy trial, his counsel argued matters such as appellant was having difficulty obtaining employment in the county with the charge pending, appellant was subject to harassment and police scrutiny, and appellant consistently protested his innocence and felt as though he were being slandered. Appellant offered no proof of such matters, however, and these are not the type of factual representations that the State's attorney could reasonably be expected to dispute, given the timing of and presentation of the oral motion to dismiss. See Pitts, 916 S.W.2d at 510.

Appellant further asserts that he was prejudiced by a change in the testimony of Stephen McMahan, who was the absent witness in September. At the trial in June, the State called McMahan and he testified that he met with and drove appellant and co-defendant Dory Wilks to the Burt house. The testimony of McMahan during the October trial, however, was offered by appellant, and was to the effect that McMahan lied in June and at all other times he implicated appellant in the burglary. At the October trial McMahan denied participating in the burglary and denied driving appellant and Wilks to the burglarized house. Appellant does not specify how the change in McMahan's

11

testimony was prejudicial to him, and we fail to discern how the change prejudiced him. To the contrary, for a witness to change testimony in the manner McMahan's testimony was changed appears to benefit appellant: it removes eyewitness testimony to appellant's participation in the burglary. We conclude that appellant has not proved prejudice from the delay. The fourth factor weighs against appellant.

On balance, only one of the three Barker factors weigh in favor of appellant, and that factor only slightly so. Two of the factors weigh against him; one heavily so. We conclude that appellant's right to a speedy trial has not been violated, and overrule his issues two and three.

## ISSUES 4 AND 5: LEGAL AND FACTUAL SUFFICIENCY
## OF THE EVIDENCE

Appellant's fourth and fifth issues challenge the legal and factual sufficiency of the evidence to prove that he entered the Burt house with the intent to commit theft. His argument primarily relies on assertions that Christopher Bushell was an accomplice witness. Bushell testified that appellant told him about how appellant conducted the burglary. In the alternative, appellant urges that the evidence was factually insufficient to prove appellant's intent to burglarize the Burt house, even if Bushell was not an accomplice witness.

When reviewing challenges to both the legal sufficiency and the factual sufficiency of the evidence to support the verdict, we first review the legal sufficiency challenge.

<u>Clewis v. State</u>, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996) (en banc). If the evidence is legally sufficient to support the verdict, we then review the factual sufficiency challenge, if one is properly raised. <u>Id</u>. Our review is taken being mindful that the jury is the sole judge of the weight and credibility of the evidence. <u>Santellan v. State</u>, 939 S.W.2d 155, 164 (Tex.Crim.App. 1997) (en banc).

The evidence is legally sufficient if, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); <u>Clewis</u>, 922 S.W.2d at 132. All the evidence is reviewed, but evidence that does not support the verdict is disregarded. <u>See</u>, <u>e.g.</u>, <u>Chambers v. State</u>, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991) (en banc).

A factual sufficiency review of the evidence begins with the presumption that the evidence supporting the jury's verdict was legally sufficient under the <u>Jackson</u> test. <u>Clewis</u>, 922 S.W.2d at 134. Factual sufficiency review is accomplished without viewing the evidence in the light most favorable to the prosecution, as the evidence is viewed in determining legal sufficiency. <u>Id</u>. The evidence is factually sufficient to support the verdict if the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. <u>Id</u>. Stated otherwise, the evidence is not factually sufficient to support a conviction if the appellate court determines, after viewing all the evidence in a neutral light, that the proof of guilt is so obviously weak as to undermine confidence in the jury's

13

determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000) (en banc).

The elements of burglary of a habitation, as applicable to the matter before us, are: (1) a person; (2) without the effective consent of the owner; (3) enters a habitation; (4) with intent to commit a felony or theft. See TEX. PENAL CODE ANN. § 30.02(a) (Vernon Supp. 2001).[2] Circumstantial evidence will support a burglary conviction. See Hardage v. State, 552 S.W.2d 837, 838-840 (Tex.Crim.App. 1977); Nelson v. State, 905 S.W.2d 63, 64 (Tex.App.--Amarillo 1995, no pet.). The State may use circumstantial evidence to prove burglarious entry, Clark v. State, 543 S.W.2d 125, 127 (Tex.Crim.App. 1976), lack of consent, Kirvin v. State, 575 S.W.2d 301, 303 (Tex.Crim.App. 1978), and intent. Stearn v. State, 571 S.W.2d 177, 178 (Tex.Crim.App. 1978).

Bushell testified that on Monday, April 20, 1998, appellant gave him $350 and identified the money as proceeds from the burglary of the Burt residence. Bushell also testified that appellant described the method used to burglarize the Burt residence, particularly mentioning that the burglars unscrewed the light bulbs from the porch.[3] Appellant's mother, Sharon Finch, testified that on Saturday, April 18, 1999, she and appellant took the money and the daily receipts from Burt's restaurant to the Burt

---

[2]Further references to sections of the Texas Penal Code will be by reference to "Penal Code §_".

[3]For reasons which are fully discussed under the analysis of appellant's eighth point of error, we hold that Bushell was not an accomplice witness. His testimony did not therefore need to be corroborated, and constituted evidence of appellant's involvement in the burglary.

residence and left them inside the residence. After they left the Burt residence, they went to her house, where they watched television together until about 3:00 a.m. in the morning, at which time Finch went to bed. She testified that she did not see or speak to appellant again until she saw him at about 9:00 a.m. the following morning at the My-T-Burger. A written statement given by McMahan to the police was introduced without limitation. In the statement, McMahan related that on the night of April 18, 1998, he was driving his car and at appellant's request, gave appellant and Dory Wilks a ride to the Burt residence and let them off in the alley. The written statement further set out that McMahan then drove around for fifteen to twenty minutes while appellant and Wilks were inside the residence. When McMahan returned, appellant and Wilks put something in the trunk of McMahan's car and McMahan then drove them back to appellant's house. Although McMahan testified in October that he did not drive appellant to the Burt house, he was cross-examined extensively about his prior inconsistent written and oral statements, including his trial testimony in June, 1999, all of which implicated appellant in the burglary.

Based on the testimony of these witnesses and all reasonable inferences and deductions to be made therefrom, a rational trier of fact could have found the existence of all the elements of the offense of burglary of a habitation beyond a reasonable doubt. See Jackson, 443 U.S. at 318-319, 99 S.Ct. at 2788-89; Geesa v. State, 820 S.W.2d 154, 156-157 (Tex.Crim.App. 1991) (en banc).

In reviewing the factual sufficiency of the evidence, we consider all of the evidence, and compare that which tends to prove the existence of disputed facts with evidence that

tends to disprove such facts. In support of his position appellant points to the evidence he presented to contradict the State's allegations. One of his witnesses was McMahan. On the witness stand, McMahan completely recanted the assertions contained in his written statement and testified that he never had any knowledge concerning the burglary of the Burt residence. He also denied driving appellant to the Burt house on Saturday, April 18, 1998. His testimony was supported by the testimony of his wife, Veronica McMahan. She testified that Stephen was with her continuously from about 5:00 p.m. on Saturday, April 18, 1998 until about 10:00 a.m. on Sunday, April 19th, and that they did not go to the part of town where the Burt residence was located at any time that night. Sammy Mathison also testified that he was at a party with McMahan from about 6:30 p.m. on Saturday, April 18th until about 2:00 a.m. on Sunday, April 19th. However, McMahan himself testified that he did not remember being at a party on that night.

It was within the province of the jury to consider all of the testimony and evidence, as well as the demeanor and credibility of the witnesses, and to resolve the numerous conflicts in the evidence. See Cain v. State, 958 S.W.2d 404, 408-09 (Tex.Crim.App. 1997) (en banc). We conclude that the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, and thus the evidence is factually sufficient. Clewis, 922 S.W.2d at 135. Appellant's fourth and fifth issues are overruled.

ISSUES 6 AND 7: READING TESTIMONY OF

A WITNESS TO THE JURY

By his sixth and seventh issues, appellant contends that the trial court abused its discretion in allowing the direct testimony of Christopher Bushell to be read to the jury in response to jurors' statements that some of Bushell's testimony had not been audible. Appellant urges that the reading of the testimony was an abuse of the trial court's discretion, denied appellant a fair trial and violated appellant's due process rights under the Fifth and Fourteenth amendments to the United States Constitution and Article 1, §§ 10 and 19 of the Texas Constitution. Appellant also references Code of Criminal Procedure art. 36.28 in his argument.

After Bushell departed the witness stand following his direct testimony during the State's case-in-chief, oral statements were made by members of the jury to the effect that some of Bushell's testimony had not been audible. The judge recessed the jury and discussed the matter with counsel for the State and counsel for appellant. Over appellant's objection, the judge brought the jury in and had the court reporter read the trial transcript of Bushell's testimony, as previously admitted before the jury, including objections by counsel and instructions and rulings by the judge. Before the reading of the transcript, however, the judge instructed the jury, in effect, that the testimony of Bushell was going to be read by the court reporter solely because of the statements by the jurors. The judge also instructed the jury that neither the testimony nor Bushell as a witness was to be accorded any added weight, credibility, or consideration other than that given other witnesses and testimony.

17

Appellant does not point out in his argument to this court how the reading of Bushell's testimony resulted in an unfair trial to him in light of the trial court's instruction to the jury. In regard to his harm analysis, however, appellant concludes that because Bushell's testimony was the only evidence presented by the State to prove appellant entered the Burt residence, it cannot be said beyond a reasonable doubt that the reading of the testimony made no contribution to appellant's conviction.

Appellant's discussion as to how the alleged error harmed him is cursory. Nevertheless, he suggests how he was harmed by the alleged error, which is sufficient to require appellate harm analysis. See Ovalle v. State, 13 S.W.3d 774, 787 (Tex.Crim.App. 2000) (en banc). In making our analysis we note that an error in admission of evidence is cured where the same evidence comes in elsewhere without objection, see Hudson v. State, 675 S.W.2d 507, 511 (Tex.Crim.App. 1984) (en banc), and that inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove. See Mayes v. State, 816 S.W.2d 79, 88 (Tex.Crim.App. 1991) (en banc).

Assuming, *arguendo*, that the trial court's allowing the reading of Bushell's testimony was an abuse of discretion and error, even considering the court's instructions to the jury as to the testimony, we conclude that the error did not harm appellant. During presentation of appellant's case, appellant recalled Bushell as an adverse witness. Bushell repeated the substance of his prior testimony about what appellant told Bushell. That is, Bushell testified, when recalled by appellant, that appellant told Bushell, among

18

other matters: (1) appellant and Wilks were dropped off close to the Burt residence by McMahan, for the purpose of burglarizing the Burt residence, (2) appellant and Wilks unscrewed the lights in the back of the Burt residence, (3) appellant went into the Burt residence through the back, (4) the $350 appellant gave Bushell was from burglary of the Burt residence, and (5) appellant broke into the Burt residence. Bushell testified that his testimony given during appellant's case was consistent with his testimony given during the State's case.

Thus, Bushell effectively testified twice, without objection, that appellant told him of entering the Burt residence to burglarize it. The second time was after Bushell's testimony was read to the jury over appellant's objection. We conclude that the error, if any, was cured and was harmless. We overrule appellant's issues six and seven.

## ISSUE 8: DENIAL OF ACCOMPLICE
## WITNESS JURY INSTRUCTION

Appellant's eighth issue alleges error by the trial court in refusing to include in the jury charge an accomplice witness instruction as to Christopher Bushell. At the time he objected to the jury charge's failure to include such an instruction, appellant objected on the basis that the evidence raised an inference that Bushell himself participated in the

burglary of the Burt residence and such participation was how he gained knowledge of how the burglary occurred. On appeal, however, he does not so argue. On appeal he urges that Bushell, either as a matter of law or as a question of fact to be resolved by the jury, could have been charged with the same offense as appellant under the law of parties, citing Penal Code § 7.02, or for a lesser included offense of theft by receiving, citing Penal Code §§ 31.03(a),(b)(2). In responding that Bushell was not an accomplice as a matter of law and that the evidence did not warrant a factual determination of the question by the jury, the State refers us to Tucker v. State, 689 S.W.2d 235, 237 (Tex.App.–El Paso 1985, pet. ref'd). We agree with the State.

The trial court instructed the jury, without objection, that a person commits the offense of burglary if, without the effective consent of the owner, the person enters a habitation with intent to commit theft or any felony. See Penal Code § 30.02(a)(1).

The appropriation of property which one knows to be stolen by another is theft, not burglary. See Penal Code § 31.03(b)(2). Theft and burglary are distinct and separate offenses.

Commission of a different "downstream" offense, even with knowledge of the prior criminal act later charged against the defendant does not make the downstream participant an accomplice in the original offense. See Tucker, 689 S.W.2d at 237. Thus, the fact that a witness received property taken during a burglary, knowing it to be stolen, does not

20

make the witness an accomplice to the burglary offense that produced the stolen property. See id.

Bushell testified that appellant gave him the sum of $350. According to Bushell, appellant told him that this money was obtained by burglarizing the Burt residence. Bushell testified that he did not assist appellant in committing the burglary and only found out about it after the fact. The record contains no evidence that Bushell was ever indicted for the same offense as appellant. Nor is there evidence in the record that Bushell performed any affirmative act either before, during or after the burglary which would have subjected him to prosecution for burglary of the Burt residence.

Even assuming that error was preserved despite the differing arguments by appellant in the trial court and on appeal, we conclude that the trial court did not abuse its discretion in failing to give an accomplice witness instruction as to Bushell. We overrule appellant's eighth issue.

ISSUES 9 AND 10: EXCLUSION OF EVIDENCE THAT
INDICTMENT AGAINST CO-DEFENDANT WAS DISMISSED

By issues nine and ten, appellant asserts that the trial court erred in excluding evidence that Dory Wilks, who allegedly participated in burglarizing the Burt residence, was indicted for the offense, and that the indictment was subsequently dismissed. Appellant offered the evidence during cross-examination of Christopher Bushell to impeach Bushell's credibility. Appellant urges that in excluding the evidence, the trial court

21

violated his rights to confront the witnesses against him pursuant to Article 1, § 10 of the Texas Constitution and the Sixth Amendment to the United States Constitution. Appellant does not argue that the Texas Constitution provides more protection to him in this matter than does the United States Constitution, thus we will not address his state constitution claim separately. See Brown v. State, 943 S.W.2d 35, 36 n.3 (Tex.Crim.App. 1997) (en banc).

We review the trial court's rulings in admitting or excluding evidence by the abuse of discretion standard. See Delaware v. Van Arsdall, 475 U.S. 673, 678-79, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, (1986) (trial judges have wide latitude in admitting or excluding evidence to cross-examine witness pursuant to right to the "effective" cross-examination guaranteed by the Confrontation Clause of the Sixth Amendment to the United States Constitution) and Green v. State, 934 S.W.2d 92, 101-02 (Tex.Crim.App. 1996). A trial court abuses its discretion only if the reviewing appellate court can say with confidence that no reasonable perception of the matter under consideration could have yielded the decision made by the trial court. See Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on rehrg) (en banc).

Generally, unless otherwise provided, relevant evidence is admissible and evidence which is not relevant is inadmissible. See TEX. R. EVID. 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury. See TEX. R. EVID. 403.

Evidence which tends to show a bias or motive for a witness to testify a certain way is generally relevant and admissible to impeach a witness. See Miller v. State, 741 S.W.2d 382, 389 (Tex.Crim.App. 1987) (en banc). Evidence of disposition of charges against a different, non-testifying person, who has been indicted for the same offense as the accused, however, generally is not admissible. See id.; Beasley v. State, 838 S.W.2d 695, 703 (Tex.App.–Dallas 1992, pet. ref'd).

Appellant offered the indictment of Wilks and Motion to Dismiss and Order of Dismissal in order to show what he perceived as a conspiracy to convict him, and to "attack [Bushell's] testimony and that evidence." On appeal, he urges that the documents were admissible to dispute and impeach Bushell's testimony and Bushell's credibility and believability.

In reviewing the Motion and Order of Dismissal, we note that the motion was predicated on the "Best interest of Justice; per the District Attorney," and was a dismissal without prejudice. The record presents no basis for the dismissal other than the prosecutor's argument to the trial judge that numerous reasons could have existed for the dismissal, including a lack of evidence due to Wilks not having made a statement that he participated in the burglary, as Bushell testified appellant made. Appellant does not present argument as to how the dismissal was relevant to Bushell, or how Bushell might have had a stake in the dismissal or possible benefit to be received via some connection between the dismissal and testimony he gave. Appellant points to no evidence that Bushell was part of a conspiracy to convict appellant, nor does he refer us to any evidence

23

in the record that the dismissal of the indictment against Wilks was in any manner contingent on Bushell's trial testimony. Dismissal of the indictment against Wilks, standing alone, does not impeach Bushell's testimony that appellant told Bushell that both appellant and Wilks burglarized the Burt residence, and thus is not relevant. We conclude that the trial judge did not abuse his discretion in excluding evidence of the indictment and dismissal. See Miller, 741 S.W.2d at 389; Beasley, 838 S.W.2d at 703. We overrule issues nine and ten.

CONCLUSION

Having overruled appellant's ten issues, we affirm the judgment of the trial court.


Phil Johnson
Justice


Do not publish.

24