**Affirmed and Memorandum Opinion filed May 24, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00420-CR

## CHRISTOPHER BRUCE JOHNS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1247048**

## MEMORANDUM OPINION

Appellant Christopher Bruce Johns appeals his conviction for aggravated robbery, challenging the sufficiency of the evidence and asserting that the trial court abused its discretion by denying his motion to suppress and admitting evidence of his extraneous offenses. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with the offense of aggravated robbery. The indictment provides, in relevant part, that while in the course of committing theft of property, appellant, with the intent to obtain and maintain control of the property,

intentionally and knowingly threatened and placed complainant in fear of imminent bodily injury and death, and exhibited a deadly weapon, a firearm. The charge was enhanced by a prior felony conviction. Appellant pleaded "not guilty" to the charged offense.

At trial, the State presented evidence that law enforcement officers were dispatched to a pharmacy in response to calls about a robbery. Pharmacy employees told officers that two, black males entered the store within seconds of each other, both wearing black hats and similar black sweatshirts with hoods. The employees believed the men were together. Officers learned that one man, holding a soda, approached a cashier and asked for a pack of cigarettes; the other man positioned himself and paced in an area at the front of the store where he could see the entrance and aisles. The cashier claimed to have reached to get the cigarettes and when she turned around, the man at the counter had brandished a silver firearm, pointed it at her and the manager, threatened them, and demanded money. According to the record, the manager placed the cash register drawer on the counter, and the man holding the firearm took money out of the drawer and fled; the other man, who appeared to be acting as a lookout, pulled his hood over his head, approached the cashier, took the pack of cigarettes, and followed the gunman out of the store. A witness saw the two men in the parking lot, running from the store together. Both men got into a dark-colored, sport-utility vehicle.

Investigators developed appellant as a suspect, leading to the eventual charges against him. Prior to trial, the cashier identified the appellant as the lookout from a photographic line-up.

Officers recovered the pharmacy's surveillance video of the store's entrance; the video was played at trial. One of the officers identified appellant in court as the lookout based on appellant's appearance in the video. The video depicts the lookout dressed in a black hat and dark sweatshirt with a hood enter the pharmacy and look around; the gunman, who was similarly dressed, entered shortly after the lookout. The video shows

2

that the gunman walked out of the store and glanced over his shoulder after he was outside the store. As reflected in the video, the lookout is seen running out of the store and catching up to the gunman outside, and then the two men can be seen running together to a point outside of the scope of the camera lens.

At trial, appellant testified that he conducted a narcotics transaction in the parking lot of the pharmacy with the man who later brandished the firearm inside the store; according to appellant, he had just met the man for the first time earlier in the day. Appellant testified that after conducting the narcotics transaction, he entered the pharmacy alone to get medicine. According to appellant, he was unable to locate the item he needed and as he was about to approach the counter to ask the cashier for help, when he realized the store was being robbed by the same man with whom appellant had just conducted the narcotics transaction. Appellant claimed to be in shock, so he grabbed a pack of cigarettes off the counter and fled from the store to notify authorities about the robbery. According to appellant, when he ran out of the store, the man holding the firearm caught up with him, hit him on the head with the firearm, dropped the firearm in appellant's car, and then fled on foot. Appellant acknowledged that officers found that very firearm at his residence. Appellant also acknowledged that he made statements to investigators in a recorded interview, but explained that he only remembered certain parts of his arrest and interview because he was under the influence of narcotics.

On rebuttal, the State sought to enter into evidence appellant's recorded custodial statement to investigators. Appellant filed a motion to suppress those statements, challenging the voluntariness of the statements he made to those officers on the ground that he was allegedly under the influence of narcotics at the time of the interview. In an evidentiary hearing held outside of the jury's presence, the trial court viewed the recording and ruled that the recorded statement would be admitted into evidence. The record contains the trial court's written findings of fact and conclusions of law on the voluntariness of the statement as related to the trial court's denial of appellant's motion.

3

At this evidentiary hearing, appellant also objected to admission of the recorded statement into evidence on the ground that it contained his confession to participating in at least two extraneous offenses. The trial court overruled appellant's objections.

When the jury returned, one of the interviewing officers testified that appellant did not appear to be under the influence of any narcotics at the time of his arrest or during the recorded interview. According to the officer, appellant did not tell interviewing officers that he had taken narcotics. The State offered into evidence the recorded interview in which appellant made various statements relating to the charged offense and admitted his involvement in two other robberies. The interview video was admitted into evidence and played in open court.

The jury found appellant guilty of the charged offense. After the enhancement paragraphs were found to be "true," appellant was sentenced to sixty years' confinement.

## ISSUES AND ANALYSIS

**Is the evidence sufficient to support the jury's verdict?**

In his first issue, appellant asserts that the evidence is insufficient to support his conviction for aggravated robbery. In evaluating a party's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party.

4

*Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits the offense of robbery if, in the course of committing theft and with intent to obtain and maintain control of property, that person "(1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Penal Code Ann. § 29.02 (a)(2) (West 2011). The offense becomes aggravated robbery if the person committing the robbery uses or exhibits a deadly weapon. Tex. Penal Code Ann. § 29.03(a)(2) (West 2011).

The jury was instructed that it could convict appellant of aggravated robbery under the law of parties. A person may be convicted as a party to an offense if the offense is committed by his own conduct, the conduct of another for which he is criminally responsible, or both. *See* Tex. Penal Code Ann. § 7.01(a) (West 2011). A person is criminally responsible for the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." Tex. Penal Code Ann. § 7.02(a) (West 2011). Mere presence of a person at the scene of a crime either before, during, or after the offense, or even flight from the scene, without more, is insufficient to sustain a conviction as a party to the offense; however, combined with other incriminating evidence, it may be sufficient. *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985). In determining whether an accused participated as a party in the commission of the offense, the jury may consider events that occurred before, during, or after the offense and may rely on acts that show an understanding and common design. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (op. on reh'g).

Appellant asserts that the only evidence linking him to the offense is testimony from the cashier and manager that appellant and the gunman appeared to be together and

5

appellant appeared to act as the lookout for the gunman. According to store employees, it was clear that appellant and the gunman were together because the men entered the store within seconds of each other, wore the same kind of clothing, and stood in the same area of the store together during the incident, in which appellant assumed the role of a lookout while the gunman threatened the cashier and demanded money. The record reflects that as the gunman threatened the cashier, appellant remained at the front of the store, a vantage point that allowed him to perform a lookout function. Witnesses testified that appellant took a pack of cigarettes before fleeing immediately after the gunman. The video shows the two men catching up outside of the store and running together in the same direction. Another witness, an off-duty officer who was in the store parking lot, saw the two men flee together in the same vehicle. The firearm used in the commission of the offense was found in appellant's residence. This evidence supports the jury's decision to convict appellant as a party to aggravated robbery. *See Jones v. State*, 845 S.W.2d 419, 423–24 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (concluding evidence was sufficient to convict a defendant as a party to aggravated robbery when two, similarly dressed men entered a store together such that the defendant positioned himself to see the cashier and the other man brandished a weapon, threatened the cashier, and took money and then both men fled, one after another, and were both seen leaving in the same vehicle, and the gun used in the robbery was recovered from the defendant's vehicle).

Appellant also claims his testimony, that he was not involved in the robbery, outweighs the evidence connecting him to the offense. Contrary to appellant's account of the incident, witnesses did not see him searching the store for a product as appellant claimed. Eyewitnesses testified that appellant appeared to pose as a lookout during the robbery and then fled the store as soon as the gunman made an exit. Also contrary to appellant's claim that the gunman struck him with the firearm and then fled on foot as appellant drove away, another witness saw the gunman and appellant run together to a vehicle and drive away together. The jury had before it all of the relevant information

6

concerning appellant's involvement in the offense, and as fact finder, had the sole discretion to believe or disbelieve any portion of his testimony. *See Santos v. State*, 116 S.W.3d 447, 457-59 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (concluding evidence sufficient when eyewitnesses identified appellant as a participant in a robbery and circumstantial evidence relating to the firearm used in the robbery corroborated witness identification and showed appellant's guilt even though appellant testified he was not involved in the robbery). When, as in this case, the trier of fact was faced with conflicting evidence, we presume the trier of fact resolved any such conflicts in favor of the prevailing party. *See Fuentes*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).

A rational trier of fact could have found beyond a reasonable doubt that appellant acted as a party to the charged offense of aggravated robbery. *See Jones*, 845 S.W.2d at 423–24. The record contains sufficient evidence to sustain appellant's conviction. *See Jones*, 845 S.W.2d at 423–24. We therefore overrule appellant's first issue.

**Did the trial court err in admitting appellant's recorded custodial interview into evidence?**

In his second issue, appellant claims that the trial court abused its discretion in denying his motion to suppress, claiming that statements he made to officers during the recorded interview were involuntary because he was under the influence of narcotics. Appellant also claims the trial court erred in allowing the recorded interview into evidence despite his objections under the Texas Rules of Evidence because the recording contains inadmissible extraneous-offense evidence of his participation in other crimes.

### *Voluntariness*

The recording of a custodial interrogation may not be introduced into evidence unless an accused knowingly, intelligently, and voluntarily waives his Fifth Amendment rights. Tex. Code Crim. Proc. Ann. art. 28.33, § 3(a) (West 2005); *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Appellant does not assert that his statement was rendered involuntary as the product of police coercion or deception.

7

Rather, appellant challenges the voluntariness of the confession on the basis that he allegedly was under the influence of narcotics at the time of the interview and did not make a knowing, intelligent, and voluntary waiver of his constitutional and statutory rights.

We review a trial court's ruling on a motion to suppress under an abuse-of-discretion standard. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). At a hearing on a motion to suppress, the trial court is the sole judge of the credibility of witnesses and the weight is to be given to their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). We afford almost complete deference to the trial court's determination of historical facts supported by the record, as well as to mixed questions of law and fact dependent on the determination of a witness's credibility and demeanor. *See State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). We consider issues that present purely legal questions under a de novo standard. *See id.* Under this standard, a decision that appellant's waiver was voluntary and knowing and intelligent is within the trial court's discretion. *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011).

Voluntariness is a factual determination that is assessed by considering the totality of the circumstances surrounding the statement, and the trial court, as finder of fact, is the exclusive judge of the credibility of witnesses and the weight to be afforded their testimony. *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000). We consider the characteristics of the accused and the details of the interrogation. *See Davis v. State*, 313 S.W.3d 317, 337 (Tex. Crim. App. 2010). Although relevant to considering the voluntariness of an accused's statement, evidence of intoxication does not necessarily render a statement involuntary. *Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996); *King v. State*, 585 S.W.2d 720, 722 (Tex. Crim. App. 1979). When the record reflects evidence of narcotics, medication, or other mind-altering agents, the question

8

becomes whether those intoxicants prevented the accused from making an informed and independent decision to waive constitutional rights. *See Jones*, 944 S.W.2d at 651.

Appellant testified at trial that he was unaware of the robbery at the pharmacy and claimed to have entered the establishment alone to search for medicine. Appellant claimed to have been shocked to see a robbery underway by the very man with whom he had just conducted a narcotics transaction. Appellant denied his involvement and participation in the robbery. As reflected in appellant's recorded interview with investigators, he admitted his involvement in two other, unrelated robberies. But, when questioned at trial about his recorded interview with investigators, appellant claimed that because he was under the influence of narcotics at the time of the interview, he could not remember most of what he said to investigators during the interview. On rebuttal, the State sought to enter the recorded interview into evidence through the testimony of Officer Smith, who interviewed appellant in the recorded video.

In ruling that appellant voluntarily and freely waived his rights before the interview, the trial court noted in its written findings that the video recording of the interview clearly showed that the appellant was read the constitutional and statutory warnings and gave his statement to investigators without invoking his rights and after acknowledging his understanding of each one of the warnings, and his waiver of his rights.

Although appellant claimed he was under the influence of "PCP" during the recorded interview, Officer Smith, who had experience dealing with those under the influence of this narcotic, testified that appellant did not appear intoxicated either at the time of appellant's arrest or at the time of the interview. *See Paolilla v. State*, 342 S.W.3d 783, 792–93 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). The officer testified that, during the interview, appellant did not slur his speech or exhibit any signs of intoxication from PCP. *See id.* The officer testified that appellant did not tell him that he was under the influence of PCP, and no such narcotic was found in the officer's search

of appellant's residence at the time of appellant's arrest. The officer stated that appellant appeared to understand the constitutional and statutory rights as they were read to him and that appellant waived those rights. The trial court was not obliged to credit appellant's testimony over that of the detaining and interrogating officers. *See Leza*, 351 S.W.3d at 351. The trial court viewed the recording of the interrogation and could measure the officer's perceptions with respect to the voluntariness of appellant's waiver. *See id.* at 352. In support of its written ruling, the trial court referred to the testimony of Officer Smith. We find no merit in appellant's arguments.

### *Admission of Video Interview*

Appellant also asserts that the trial court erred in admitting the recorded interview into evidence because, in the recording, appellant acknowledged having participated in two other robberies and these extraneous offenses were inadmissible under Texas Rules of Evidence 403 and 404(b). The trial court overruled appellant's objection, in which he raised this complaint.

We review a trial court's ruling on the admissibility evidence under an abuse-of-discretion standard. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996). Under this standard, we uphold the trial court's ruling if it falls within the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391–92 (Tex. Crim. App. 1990) (op. on reh'g).

According to appellant's testimony, he was not involved in the charged offense. Appellant claimed that after he left the pharmacy, the gunman followed him and struck him on the head with the firearm, causing appellant to bleed. Appellant denied being able to recall what he told investigators in a recorded interview, claiming that he was under the influence of narcotics. As reflected in appellant's testimony, he was able to recall many events of the evening except what he told investigators in the recorded statement. In the following exchange on cross-examination, appellant describes the events leading up to his arrest:

> [Prosecutor]: Okay. So then after the police grabbed your face, "This has got to be him," then what happened?
>
> [Appellant]: Okay. Once they got me, ma'am, and grabbed my face, they handcuffed me. They grabbed some—they grabbed some clothes for me, they arrested me and they took me downstairs and I didn't know what I was being arrested for, so when I got—once I got downstairs, they told me that I was being arrested for the aggravated robbery of Pablo Montoya, which I don't even know who Pablo Montoya is.

Additionally, during cross-examination, appellant denied being able to recall that he told investigators that he was involved in an aggravated robbery of a "Pablo Montoya" or the robbery of "another Mexican guy." When asked on cross-examination if he remembered what he told investigators in the recorded interview, appellant stated "I don't remember what I told them about Pablo Montoya, ma'am. I don't know this guy. I just said anything. The drugs help me say anything. I don't know. I'm being scared. What else can I do?" Appellant could not recall telling the investigators that he sustained a bloody head wound when he attempted to rob another man of a wallet and the man struck appellant; however, appellant claimed "I don't remember none of that, and that didn't even occur that night."

On rebuttal, the State offered the video interview into evidence. Appellant objected to the admission of the recorded interview under Rules of Evidence 403 and 404(b) and asserted that it contained extraneous-offense evidence. The State argued that by his previous testimony, appellant had opened the door to rebuttal and impeachment.

The State referred to appellant's prior testimony that he could not recall anything he said in the recorded interview with investigators and, specifically, could not recall informing investigators of his involvement with an aggravated robbery of a Pablo Montoya or "another Mexican guy" or that appellant's head was bleeding as a result of a head injury sustained during a previous robbery. The State also referred to appellant's testimony that he did not know who Pablo Montoya was. The trial court overruled appellant's objection and allowed the recording in its entirety.

In his appellate brief, appellant challenges the trial court's ruling on the basis that the extraneous-offense evidence lacked similarity with the charged offense and thus should not have been admitted under Rule 404(b).[1] But, the State did not offer the evidence under Rule 404(b); the State offered the evidence for purposes of impeachment.[2] Therefore, Rule 404(b) did not apply. Appellant does not assert on appeal that the testimony was not properly admitted as impeachment evidence. Appellant argues only that the extraneous-offense evidence lacks similarity to the charged offense

---

[1] Such arguments are generally used to support a defensive theory of mistaken identity. *See Johnson v. State*, 68 S.W.3d 644, 650–51 (Tex. Crim. App. 2002) (providing that for extraneous-offense evidence to be admissible to show identity, identity must be an issue in the case and the extraneous-offense evidence must be so similar to the charged offense as to mark the offenses as the accused's handiwork). At trial, identity was not a contested issue; appellant testified that he was inside the store during the robbery, though he denied any involvement in the offense. Moreover, appellant did not raise these arguments relating to the lack of similarity between the charged offense and the extraneous-offense evidence in the trial court.

[2] Additionally the State asserted the evidence was admissible because appellant had opened the door to this evidence by mentioning the other robberies. Extraneous unadjudicated offenses may be admissible if the accused opens the door to admission of such evidence. *Houston v. State*, 208 S.W.3d 585, 591 (Tex. App.—Austin 2006, no pet.); *Beasley v. State*, 838 S.W.2d 695, 706–07 (Tex. App.—Dallas 1992, pet. ref'd). When a party opens the door, leaving a false impression, the opposing party is permitted to present evidence to correct the mistaken impression. *See Houston*, 208 S.W.3d at 591; *Beasley v. State*, 838 S.W.2d at 707; *see also Ortiz v. State*, 834 S.W.2d 343, 346 (Tex. Crim. App. 1992). Without any prompting by the State in its cross-examination, appellant volunteered that he did not know who Pablo Montoya was and could not recall whether appellant told investigators of appellant's involvement in other robberies. Appellant's testimony opened the door to rebuttal evidence of appellant's statements concerning his involvement in the other robberies. *See Beasley*, 838 S.W.2d at 707.

12

and, for this reason, it should have been ruled inadmissible. Appellant has neither challenged nor provided any argument, analysis, or citation to legal authority attacking the trial court's ruling on the basis that the evidence was not admissible for the purposes of impeachment or rebuttal. *See* Tex. R. App. P. 38.1(i); *March v. State*, 343 S.W.3d 158, 161–62 (Tex. App.—Texarkana 2011, pet. ref'd) (providing that an appellant did not adequately brief the grounds upon which the trial court ruled). By failing to challenge and adequately brief the basis for the trial court's ruling, appellant cannot demonstrate that the trial court abused its discretion in admitting the video interview into evidence. *See* Tex. R. App. P. 38.1(i). We overrule appellant's second issue.

The trial court's judgment is affirmed.


/s/  Kem Thompson Frost
    Justice


Panel consists of Justices Frost, Brown, and Christopher.

Do Not Publish — TEX. R. APP. P. 47.2(b).